605 A.2d 642

**Billy GUY aka Damon Hackett**

v.

**STATE of Maryland.**

**No. 928, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 30, 1992.

Richard V. Falcon (William H. Murphy, Jr., on the brief), Baltimore, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before ROSALYN B. BELL, FISCHER and HARRELL, JJ.

ROSALYN B. BELL, Judge.

Billy Guy, a/k/a Damon Hackett, pled guilty in the Circuit Court for Baltimore City to two counts of conspiracy to distribute cocaine, one count of use of a juvenile to distribute cocaine, one count of conspiracy to smuggle cocaine, one count of conspiracy to smuggle heroin, and one count of heroin conspiracy involving Western Union.[1] Guy pled not

---

1. At oral argument, Guy's counsel suggested that we should consider the guilty plea charges in light of the suppression issue raised in the briefs. Counsel made no such argument in his brief and was unable to provide any legal support for this argument; we see none. As the State points out, Guy may not challenge on appeal his convictions on those charges to which he pleaded guilty, without seeking leave to appeal. Md.Cts. & Jud.Proc.Code Ann. § 12–302(e) (1974, 1989 Repl. Vol.); *McElroy v. State,* 90 Md.App. 48, 54, 599 A.2d 1215 (1992). No such leave was sought by or granted to Guy in this case. Treating Guy's brief as encompassing an application for leave to appeal on the guilty pleas, the application is denied. Accordingly, we will only consider the two charges which are properly before us on direct appeal, the drug kingpin convictions.

guilty, on an agreed statement of facts, to two charges of violating Md.Code Ann. Art. 27, § 286(g)(2) (1957, 1992 Repl. Vol.)[2] (hereinafter referred to as the drug kingpin conspiracy charges). The trial judge found Guy guilty of the drug kingpin conspiracy charges and sentenced him to 20 years in prison, without the possibility of parole, as required by Md.Code Ann. Art. 27, § 286(g)(2)(i) (1957, 1992 Repl. Vol.). Guy has appealed, contending that the trial judge erred:

— in failing to grant a postponement, or to allow Guy's counsel to seek a postponement from the administrative judge, after the State obtained superseding indictments on the day of trial;

— in refusing to dismiss the indictments for duplicity because they charged Guy with several acts stated in the disjunctive rather than the conjunctive;

— in denying Guy's motion to suppress evidence obtained from Guy following his arrest for loitering in a "drug-free zone"; and

— in holding that the Baltimore City ordinance forbidding loitering in a "drug-free zone" was constitutional.

We will reverse on the first issue, but will discuss the others in the event they might be relevant to a new trial.

## FACTS [3]

On September 7, 1990, a grand jury in Baltimore City returned two indictments[4] charging Guy with violation of

---

**2.** Section 286(g)(2) reads:
 "A drug kingpin who conspires to manufacture, distribute, dispense, bring into, or transport in the State controlled dangerous substances in one or more of the amounts described under subsection (f) of this section is guilty of a felony...."

**3.** The facts stated herein relate only to the drug kingpin conspiracy charges, since, as we have noted, only those charges are properly before us for determination in this appeal.

**4.** One of the kingpin conspiracy charges involved cocaine, while the other involved heroin.

Art. 27, § 286(g).[5]   During several days of pretrial motions, Guy moved to dismiss the drug kingpin conspiracy indictments as vague because they did not provide a definition of the term "drug kingpin."   On March 6, 1991, the trial judge "dismissed" the kingpin conspiracy indictments, but allowed the State to "amend" the indictments to include the statutory definition of a drug kingpin.   The next day, the State "amended" the "dismissed" indictments to include the statutory definition of "kingpin" set forth in Art. 27, § 286(g)(1).   Guy immediately moved for a postponement to consider the amended indictments.   The trial judge denied the motion and also refused to allow Guy to go to the administrative judge to ask for a postponement.   Guy then moved to dismiss the amended indictments on vagueness grounds.   The trial judge again denied the motion.

On the same day, March 6, the State obtained "new" indictments from the grand jury, which were identical to the "old" indictments, as amended.

On March 11, 1991, the day the trial was set to begin, the State moved to arraign Guy on the "new" (March 6) indictments, in lieu of the amended indictments.   The stated purpose of this request was to "remove the issue of amended indictment from the appellate court."   Over Guy's objection, the trial judge granted the State's motion.

The trial judge then arraigned Guy on the new kingpin conspiracy indictments.   Guy pled not guilty and, when the trial judge asked him if he wanted a jury trial or a court trial, Guy requested time to consult with his attorney. Following a brief recess, Guy's counsel declined to enter his appearance on the new indictments.   Guy's counsel did, however, request a postponement to consider the new in-

---

5.   Each of the two drug kingpin conspiracy indictments were single-count indictments.   All other charges, including those to which Guy ultimately pled guilty, were alleged in separate charging documents.

dictments.[6] Specifically, he pointed out to the trial judge that the new indictments were stated in the disjunctive, rather than the conjunctive, and thus may have violated the principles enunciated in *State v. Beers*, 21 Md.App. 39, 318 A.2d 825 (1974). The trial judge denied the request for a postponement and told Guy's counsel that he was "wrong" about the *Beers* issue.

At the State's suggestion, the trial judge then elected a jury trial for Guy[7] and, when Guy requested a public defender, appointed his counsel (who had moments earlier declined to enter his appearance) as an assigned public defender, over counsel's objection. That same day, a jury was empaneled and sworn.[8]

On March 13, 1991, Guy pled not guilty, on an agreed statement of facts, to the drug kingpin conspiracy charges. The trial judge found him guilty of both charges. On April 16, 1991, the trial judge sentenced Guy to 20 years in prison without the possibility of parole, the minimum sentence allowed under Art. 27, § 286(g)(2)(i). Guy then appealed to this Court.

---

6. Guy's counsel also requested, as he had on March 6, to present his request for a postponement to the administrative judge. The trial judge once again refused.

7. Although the trial judge asked Guy if he wanted a jury trial or a court trial, he never received a response because the discussion shifted to counsel's refusal to enter an appearance. By failing to make any inquiry or allow Guy himself to elect the mode of trial, the trial judge erred. In Maryland, there is no legal distinction between a court trial and a jury trial, and neither is to be preferred over the other. *Thomas v. State*, 89 Md.App. 439, 441–442, 598 A.2d 789 (1991). As in that case, the trial judge here made no inquiry into appellant's ability to choose between the two forms of trial, but simply assumed, in the absence of an election, that a jury trial was preferred.

8. Based on the record now before us, it is not clear whether Guy was ever part of the jury trial that commenced on March 11. What is clear is that, sometime between March 11 and March 13, Guy agreed to plead guilty on certain charges, and to plead not guilty on an agreed statement of facts to the drug kingpin conspiracy charges.

POSTPONEMENT/DISMISSAL

On appeal, appellant contends that the trial judge erred in two ways: first, when he refused to grant a postponement, or allow appellant to seek a postponement from the administrative judge, on the superseding indictments on March 11; and second, when he refused, on the same date, to dismiss the superseding indictments as duplicitous. We agree with appellant's first contention, but reject the second. Therefore, we will reverse. We explain.

Initially, we note that there was a great deal of argument in the trial court over the proper way to handle the amendments to the September 7 drug kingpin conspiracy indictments. As the State pointed out in introducing the March 6 indictments, however, the new indictments mooted the issue of amendments to the original drug kingpin conspiracy indictments. While we have some questions about the trial judge's reasoning on these issues, we need express no opinion on any issues relating to the amendment of the March 6 indictments.

Appellant objected to the new indictments, claiming (1) that he had not had an opportunity to review them; and (2) that they were duplicitous because they charged him with several different acts stated in the disjunctive. The trial judge focused his inquiry on appellant's request for a postponement on appellant's preparedness for trial:

"THE COURT: All right. First, Mr. Stein, is there anything that—I have heard you before, and I've listened to all your requests for postponements and so forth, but is there any *new information* with respect to what has occurred this morning, that would place you in a *position of unpreparedness* to go forth with the kingpin trial?

"MR. STEIN: Your Honor, I was—

"THE COURT: Of course, you are not representing him at the moment.

"MR. STEIN: I understand that. I was prepared to defend the defendant for a drug kingpin trial. In all candor, I was prepared under the old indictment.

"THE COURT: Is there anything in the new indictment which simply has the insertion of the description, definition as to Part 1 of the, of the Article 27, which we've referred to in the previous arguments?

"MR. STEIN: Well, Your Honor—

"THE COURT: That allows you, finds you in a position of *lack of prepare[d]ness?*

"MR. STEIN: Yes, Your Honor. Because of the new wording of the indictment, if you will note in the definition of kingpin, that the State has now inserted, they have inserted the word 'or' when talking about the definition of a kingpin.

"I cite to the court State v. Beers, and they only cite—

"THE COURT: Give me the words, read the sentence you're referring to.

"MR. STEIN: Yes, sir. Give me one moment, sir.

\*    \*    \*    \*    \*    \*

"MR. STEIN: Well, in the definition in the indictment, they define a kingpin as a person who occupies a position of an organizer, supervisor, financier, or manager. End of quote. Because of the insertion of the word or, it makes the definition in the disjunctive, and I cite to the court State v. Beers, that although while not on all fours, is a case, an interesting case because it is close to the issue that I was going to get to. It makes me unprepared because I believe the defendant now has a real legal argument in addition to the constitutional argument. And that is that he cannot be charged in a single count. Either he is an organizer or he's a financier or he's a manager, and I'm suggesting to the court that if that's the State's position, that they don't know which he is—indeed he may be all of them according to the State—he's entitled to an indictment that gives him a count, a drug kingpin count with each of those definitions in a separate count.

"THE COURT: Oh, I don't think so at all. I think all the State has to do is accomplish any of those positions.

It's the same as a theft charge, or any other charge, which there are multitudinous situations and which you are familiar with as experienced counsel." (Emphasis added.)

This colloquy indicates that two issues were raised by appellant, both of which were rejected by the trial judge: (1) a request for a postponement; and (2) a request to dismiss the indictment as duplicitous.

On appeal, appellant argues that the indictment was duplicitous because it charged him with several different acts stated in the disjunctive. He argues that charging documents phrased in this manner violate the rule of duplicity set forth in *Thanos v. State*, 282 Md. 709, 387 A.2d 286 (1978), and *State v. Beers*, 21 Md.App. 39, 318 A.2d 825 (1974).

As a preliminary matter, the State contends that this issue was not preserved for our review because appellant never formally moved to dismiss the indictment. We do not agree.

The State is correct in pointing out that appellant never formally moved to dismiss the indictment for duplicity. The State fails to recognize, however, that appellant raised the duplicity issue in the context of a request for a postponement. The trial judge, in response to appellant's proffer, indicated not only his belief that appellant's argument did not warrant a postponement, but indicated that, even if appellant was given time to research the issue, the trial judge would rule against him. Rule 8–131 restricts our review ordinarily to issues "raised in or decided by" the lower court. Appellant raised the duplicity issue and the trial judge, both on the merits and in the context of the request for a postponement, decided it. That is as much as the Rule requires. We hold that this issue has been preserved for our review.

It has long been held that a single count of a charging document may not charge a criminal defendant

with more than one offense. *Ayre v. State*, 21 Md.App. 61, 65, 318 A.2d 828 (1974). We also said in that case:

"When a statute creates an offense and specifies several different acts, transactions, or means by which it may be committed, an indictment for violation thereof may properly allege the offense in one count by charging the accused in *conjunctive terms* with doing any or all of the acts, transactions, or means specified in the statute."

*Ayre*, 21 Md.App. at 65, 318 A.2d 828 (emphasis added). In *Beers*, 21 Md.App. at 43, 318 A.2d 825, we applied this rule to a situation where a criminal statute set forth several different intents which were sufficient to constitute the crime:

"We see no logical reason to require conjunctive allegation of the several means by which a crime is committed, as stated in *Ayre v. State, supra,* and the numerous authorities there cited, but to permit disjunctive allegation of the several intents with which it may be committed, as in the case before us."

Thus, a single count of a charging document may not charge, in disjunctive terms, the commission of several different acts or transactions, any one of which is sufficient to constitute the crime charged.

■ What both parties to this appeal have failed to recognize, however, is that the duplicity is not, as in *Beers* and other duplicity cases, in the charging of the act constituting the offense, but in the definition of the term "kingpin." While being a kingpin is part of the offense defined in Art. 27, § 286(g)(2), the phrase appellant objects to, "organizer, supervisor, financier, or manager," is not a part of the substantive offense itself. Rather, it is part of § 286(g)(1), which defines the term "kingpin." While appellant is correct in pointing out that the language of the indictment is stated in the disjunctive, the prohibition against such charging applies only to acts in and of themselves part of the offense charged. The act charged here is *not* being an "organizer, supervisor, financier, or manager," as stated in Art. 27, § 286(g)(1), but being a "kingpin

who conspires" to do various things as stated in § 286(g)(2). Thus, the indictment was not subject to being dismissed under the rule of duplicity enunciated in *Beers*.

█ This does not mean that appellant was without recourse in determining the exact nature of the charges against him. Criminal defendants are entitled, under Rule 4–241, to a bill of particulars. Appellant's counsel, in recognition of this Rule, requested a postponement "to allow me and [appellant] to decide where we stand in regard to my representation, and any motions he has to file, that the rules allow him to do, and that's the request that we would make." The trial judge responded: "I don't think I am going to do that."

Later, when a co-defendant requested time to file a motion for a bill of particulars, the trial judge responded that the time for such a motion was already past. This response is reflective of the trial judge's attitude that the new kingpin conspiracy indictments were merely a continuation of the old, dismissed indictments. Both conceptually and factually, this belief was erroneous. Once an indictment is dismissed, for whatever reason, it is of no further force and effect. Thus, whatever motions for a bill of particulars were or were not filed on the September 7 kingpin conspiracy indictments became irrelevant on the introduction of the March 6 indictments.[9]

Furthermore, the changes made in the new kingpin conspiracy indictments were not, as the trial judge continually stated, merely technical in nature. The changes made in the March 6 indictments provided a definition of the term "kingpin," which the trial judge indicated was vague in the absence of such definition. By his own actions, the trial

---

9. As counsel for one of appellant's co-defendants asked the trial judge: "Well, we're talking about a new indictment, Your Honor, which ... we didn't find out about until this morning. How could we ask for a bill of particulars on an indictment we didn't know about?" The trial judge's only response to this question was: "All right. Well, thank you for your argument."

judge therefore demonstrated that, to him, the changes made in the March 6 indictments were of more than "technical" significance. Additionally, as discussed earlier, the March 6 indictments introduced entirely new language into the case, such as "organizer, supervisor, financier, or manager." These terms, stated in the disjunctive, had not previously been made part of the indictments. These terms were not part of the actual acts charged as part of the offense and thus did not fall under the duplicity rule of *Beers* and *Thanos*. Nevertheless, appellant was entitled to a postponement so as to prepare for trial on the new indictments, including but not limited to the right to file a motion for a bill of particulars on the new indictments introduced on March 6.[10] The trial judge's failure to grant such a postponement was an abuse of discretion, and we will therefore reverse.[11]

___

10. A bill of particulars need not spell out in its entirety the State's evidence and theory of the case. *Polisher v. State,* 11 Md.App. 555, 587, 276 A.2d 102 (1971). Nevertheless, a defendant is entitled to proceed to trial with adequate knowledge of which of the four means of being a kingpin, set forth in Art. 27, § 286(g)(1), the State intends to charge him. If the State's allegations do not include one or more of the means specified, the defendant should be able to discover upon which the State intends to rely. Since, in this case, the allegation in the indictment was in the disjunctive, the appellant should expect a bill of particulars to provide the specific nature of the State's charges.

11. Appellant also raises the issue of whether the trial judge erred in barring appellant from seeking a postponement from the administrative judge. Only the administrative judge or his designee may grant a postponement which would result in a trial date later than 180 days after arraignment or first appearance of counsel. *State v. Robertson,* 72 Md.App. 342, 346, 529 A.2d 847 (1987). Such a postponement must also be accompanied by a finding of good cause. Rule 4–271(a). Because it is not at all clear on this record that a continuance would have implicated Rule 4–271(a), we will not address this issue directly. We note, however, that, although no cases have addressed the question, if Rule 4–271 is implicated, it would be an abuse of discretion for the trial judge to deny a defendant access to the only entity empowered to grant appellant a postponement. In his brief and at oral argument, appellant suggested that the trial judge's denial of access to the administrative judge is "standard practice" in the Baltimore City Circuit Court. Where the 180–day rule is implicated, denial of access to the administrative judge subverts the purpose of Rule 4–271, unless

## THE MOTION TO SUPPRESS

Appellant also contends that the trial judge erred in denying his motion to suppress evidence seized from him upon his arrest for loitering in a drug-free zone and conspiracy to violate the controlled dangerous substance laws. In this context, appellant also challenges the constitutionality of the Baltimore City anti-loitering ordinance.

Appellant was arrested on July 28, 1990 on charges of loitering in a drug-free zone. The officers who arrested appellant were apparently not aware that he and his organization were the targets of an ongoing, large scale investigation. While appellant was being processed at the police station following his arrest on the loitering charge, other officers, involved in the investigation of his drug operation, became aware of his presence.

After confirming that the arrestee, who gave the name Damon Hackett, was, in fact, Billy Guy, the investigating officer examined and seized some of the personal effects taken from appellant upon his arrest on the loitering charges. Appellant was then charged with various drug related offenses.

The trial judge concluded that appellant's arrest was supported by probable cause for two reasons. First, the trial judge found that the police had probable cause to believe he violated the Baltimore City anti-loitering ordinance. Second, the trial judge found that the police had probable cause to believe appellant had conspired to violate the controlled dangerous substance laws. While we might agree with these conclusions, we see two other bases for affirming the trial judge's ruling, based on facts that were undisputed at the suppression hearing.

The personal effects seized from appellant following his arrest included some expensive jewelry, a note from his wallet and a credit card. Records of the credit card's use

the trial judge is the properly appointed designee of the administrative judge.

were later obtained. These materials were referred to three times in the 40–page agreed statement of facts that formed the basis of Guy's conviction on the drug kingpin conspiracy charges. The remainder of the agreed statement of facts was based on an ongoing police investigation wholly separate from any information gained as a result of appellant's arrest on the loitering charge. *See McMillian v. State*, 85 Md.App. 367, 378, 584 A.2d 88 (1991), *vacated and remanded on other grounds*, 325 Md. 272, 600 A.2d 430 (1992):

> "Despite the prior illegal conduct, evidence may be admitted if (1) it has but an attenuated link to the underlying illegality, (2) if it derived from a source independent of the illegal conduct, or (3) if the evidence would inevitably have been discovered absent the illegality."

Both the second and third exceptions noted in *McMillian* apply to the vast majority of the evidence upon which appellant's conviction was based. The ongoing police investigation into appellant's drug activities was completely independent of any illegality in appellant's arrest on the loitering charge. *See* LaFave, *Search and Seizure*, § 11.4(a) (2d ed. 1987) (when the independent source exists and is known prior to any police illegality, a strong case for admissibility is presented).

Furthermore, the evidence obtained from appellant upon his arrest on the loitering charge would have been discovered inevitably. The ongoing police investigation of appellant had already uncovered a plethora of information. The relatively minimal additional information obtained when appellant was arrested was similar to the already obtained credit card and other information. Thus, the evidence obtained from appellant would have ultimately been obtained from other sources regardless of any illegality in appellant's arrest and resulting search. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) ("If the prosecution can establish by a preponderance of the evidence that information ultimately or inevitably would have been discovered by lawful means ... then the deter-

rence rationale has so little basis that the evidence should be received."); *Whitmire v. State,* 61 Md.App. 548, 554, 487 A.2d 686 (1985).

We hold that, assuming without deciding that appellant's arrest on the loitering charge was illegal, any evidence seized from him pursuant to that arrest was nonetheless admissible under both the independent source and inevitable discovery exceptions to the exclusionary rule. Since we need not do so, we express no opinion on appellant's challenge to the constitutionality of the Baltimore City anti-loitering ordinance.

DRUG KINGPIN CONSPIRACY JUDGMENTS REVERSED.

APPLICATION FOR LEAVE TO APPEAL ON GUILTY PLEA CHARGES DENIED.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.