664 A.2d 42

**Robert Allan TAPSCOTT**

v.

**STATE of Maryland.**

**No. 1323, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Aug. 31, 1995.

110

Barry H. Helfand, Rockville, for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Alexander Williams, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before WILNER, C.J., ALPERT, J., and KATHLEEN O'FERRALL FRIEDMAN, Judge, Specially Assigned.

KATHLEEN O'FERRALL FRIEDMAN, Judge, Specially Assigned.

Appellant, Robert Allan Tapscott, appeals from a jury verdict in the Circuit Court for Prince George's County convicting him of four related criminal charges. The jury found appellant guilty of two counts of child abuse and two counts of

incest arising out of two separate incidents involving the same victim. The court sentenced him to concurrent five-year terms on the first three counts, suspending all but one year in favor of three years probation. The court merged the conviction on one of the incest counts.

On October 8, 1993, appellant's counsel entered his appearance, and on November 4, 1993, in an omnibus motion, appellant's counsel made a demand for a speedy trial. The court set the trial for February 1, 1994.[1] There were four continuances. The first one, granted February 1, 1994, was at the request of appellant. On the next trial date, February 28, 1994, the results of DNA testing, which were necessary to prove the relationship between appellant and the complaining witness, were not complete. As a result, the State requested a continuance beyond March 30, 1994, the 180–day time limit imposed by Md.Ann.Code, art. 27, § 591 (1992) and Md. Rule 4–271. *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979). The administrative judge for Prince George's County, reluctant to extend beyond the deadline unless the analysis could not be completed on time, denied the request, but set a new trial date for March 16, 1994. On the next trial date, the State informed the administrative judge that the analysis would not be submitted until March 28, 1994 and again asked for a continuance. Upon the administrative judge's finding of "good cause", he granted the continuance and set a new trial date for April 19, 1994, 20 days beyond the 180 day limit.

On April 19, 1994, the State informed the court that appellant had demanded additional information which the State needed more time to supply. Appellant asked the court to exclude the DNA evidence. In order to allow the defense to obtain the material, the trial court granted the fourth continuance to May 9, 1994, despite defense counsel's objection. Each time the court continued the case, defense counsel refused to consent under *State v. Hicks.* Trial began May 9, 1994.

---

1. The case was originally set for January 3, 1994 but was reset after a readiness conference.

On the first day of trial and before it began, appellant made four oral motions: 1) a motion to dismiss the four counts of the indictment on the grounds that the State selectively prosecuted appellant; 2) a motion to suppress a tape recorded conversation between the victim and the appellant; 3) a motion to dismiss the first and second counts of the indictment because they did not state the age of the victim of the alleged child abuse; and 4) a motion to dismiss the third and fourth counts for the reason that they did not specify the relationship between the alleged victim and appellant. The trial court denied all four motions.

Appellant presents nine contentions, which are reordered and restated as follows:

 I. Was appellant denied a speedy trial?

 II. Must an indictment charging child abuse allege the specific age of the child?

 III. Must an indictment charging incest allege a specific degree of consanguinity?

 IV. Did the trial court err by admitting testimony of the DNA expert?

 V. Did the trial court properly control the scope of cross-examination?

 VI. Did the trial court err in admitting the tape recorded conversation between the appellant and the complaining witness?

 VII. Was there sufficient evidence to support the convictions?

 VIII. Did the trial judge amend the two child abuse indictments through improper jury instruction?

 IX. Was the appellant the target of selective prosecution and a victim of unlawful discrimination?

We shall affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### The Evidence

Through the testimony of the victim, K.C., the State showed that, between June and September, 1991, appellant had sexual intercourse with K.C. and that he performed oral sex on her on two separate occasions: one at his home and another in a hotel room. At the time, she was 17½ years old [2] and appellant was 37 years old.

The State presented evidence that appellant and K.C.'s biological mother, G.R., had the same father by blood, making them half-siblings. Thus K.C. is appellant's half niece. G.R. testified that for several years, when she was a young child, she lived in Washington, D.C. with her mother and her father, James Robert Tapscott. At some point, her parents separated, and she had no further contact with her father until 1978, when, married and living in New York, she located him in Edgewood, Maryland.

According to G.R., when her two daughters were fourteen years old and six years old,[3] she relocated from New York to Gaithersburg, Maryland to be near her father and his family. Appellant, by this time a grown man living separate from his father in the Gaithersburg area, met G.R. and her children. He helped her and the children move and thereafter, they developed what G.R. described as a "very strong relationship." G.R. stated that their "Uncle Sonny" spent a lot of time with the girls and that they looked to him for advice. K.C. testified that as she got older, she saw him "once, twice a month" and that "he was there for us if we needed him."

Two experts' testimony established the blood relationship. Terry Houtz, Genetic Testing Manager with the Baltimore RH Typing Laboratory, qualified as an expert "in the area of

---

2. K.C.'s birthday is November 6, 1974.

3. K.C. has an older sister who is the complaining witness in a similar case against the Appellant. Upon the State's motion, the Court severed the charges involving the sister from the four counts charged in this case.

blood analysis, kinship analysis, and HLA testing." [4] Based on blood testing of G.R. and appellant, Houtz opined that, to a reasonable degree of scientific certainty, it was more likely than not that appellant and G.R. were related. Houtz testified that they shared certain genetic traits or genetic similarities and that the results were consistent with their being half-siblings.

Francis Chiafari, a molecular geneticist with the Baltimore RH Typing Laboratory, testified as an expert "in the area of DNA testing, blood testing and typing for the purpose of determining relationships between parties." He stated that it was "extremely likely that Robert Tapscott, Junior, is a sibling of [G.R.]." He quantified the relationship probability as 99.86%.

According to the State's version of the case, the first sexual encounter between K.C. and appellant took place during June 1991, in appellant's home. K.C.'s mother gave her approval for appellant to pick up K.C. after school. K.C. was to spend the night at his house so that he could take her to a job interview that he had arranged for her the next day. K.C. testified that, after picking her up, appellant took her to a FOP lodge where they both drank heavily. They later went to his house where they swam in his pool, drank more beer, and watched television. After both fell asleep on the sofa, K.C. awoke before sunrise and went to appellant's bedroom. Appellant tucked her into bed and began to leave, but when K.C. invited him to get in bed with her, he did. They both fell asleep. She awoke to appellant rubbing her shoulders and back, which led to sexual intercourse and oral sex performed by appellant on K.C. At trial, appellant denied having sexual intercourse with K.C. but admitted to K.C. performing oral sex on him.

K.C. testified about the events leading to the second incident which occurred in September 1991 in a hotel room.

---

4. According to the testimony of Mr. Houtz, HLA stands for human leukocyte antiagents. Leukocytes are the white blood cells.

Upset, confused and crying about her boyfriend leaving for college, she called appellant at the home of one of his friends. She then drove to his friend's house to see appellant. There she accepted his offer to go with him to his part-time job at a Greenbelt hotel. K.C. testified that appellant arranged to meet her in one of the rooms where they again engaged in sexual intercourse and oral sex. At trial, although admitting that he obtained the room and met her there, appellant denied that any sexual acts occurred.

The State's case included evidence by way of a recorded telephone conversation between K.C. and appellant. At the suggestion of the police and with equipment supplied by them, K.C. initiated this telephone conversation from her residence. During this conversation, appellant acknowledged that he had "sex" with her. He said:

> You said you don't blame yourself and I don't have a problem with that. I'm not, again, I don't want to accuse but both times before anything happened, not so much the first time, but the second time I mean it was discussed. It wasn't something that you know we were both totally intoxicated one took advantage of the other one, and as you said yourself I, I was under the impression that it was something between, you know, consenting adults if you will.

We will recount other facts as necessary when we discuss appellant's separate contentions.

# I

## Speedy Trial

Appellant contends that the trial court should have dismissed the charges against him based on statutory and constitutional speedy trial violations.

Upon receipt of the DNA results, defense counsel requested a report explaining how the tests were completed. When the court called the case for trial on April 19, 1994, the State informed the trial judge that the defense had made a request for DNA evidence pursuant to Md.Code Ann., Cts. & Jud.

Proc., § 10–915 (1992 Repl.Vol.), but that the RH Typing Laboratory did not have enough time to comply with the request. Appellant requested that the DNA results be excluded from evidence because there was no such report. The State argued that appellant did not make a timely request for DNA information. Rather than sending the case to the administrative judge who had previously continued the case beyond the 180 day limit, the trial judge continued the case to give the State time to provide the additional information and the defense time to review the material. Appellant claims that this delay in the trial violated his statutory and constitutional rights to a speedy trial.

Appellant claims that he raised this speedy trial argument prior to trial and at trial, but the record demonstrates that appellant did not clearly raise such a claim. Although appellant repeatedly referred to *State v. Hicks*, there was no mention of his constitutional right to speedy trial. Regardless, his contention regarding the speedy trial is without merit.

## A. Statutory Claim

The State must bring a criminal defendant to trial no later than 180 days after the earlier of the first appearance of the defendant in circuit court or the appearance of his counsel. Md.Ann.Code, art. 27, § 591 (1992 Repl.Vol.); Md.Rule 4–271(a)(1); *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979). However, Md.Rule 4–271(a) provides that, "for good cause shown", an administrative judge or that judge's designee may extend the trial date beyond the 180 day period. The judge enjoys wide discretion in deciding good cause, and his determination carries a "heavy presumption of validity". *Dalton v. State*, 87 Md.App. 673, 682, 591 A.2d 531 (1991) (citing *Marks v. State*, 84 Md.App. 269, 277, 578 A.2d 828 (1990)). To obtain dismissal for an alleged violation, the defendant has the burden of demonstrating either a clear abuse of discretion or a lack of "good cause" as a matter of law. *State v. Cook*, 322 Md. 93, 98, 585 A.2d 833 (1991); *State v. Frazier*, 298 Md. 422, 454, 470 A.2d 1269 (1984).

Appellant mistakenly asserts that his statutory right to a speedy trial was violated. There is no statutory right to a speedy trial. In *Marks v. State*, this court clearly explained that "the purpose of the 180 day rule is to protect the societal interest in the prompt trial of criminal cases, the benefits that the rule confers upon defendants are incidental." *Id.*, 84 Md.App. at 277, 578 A.2d at 832 (citing *State v. Hicks*, 285 Md. at 320, 403 A.2d 356). Consequently, the mandate to the State to bring the case to trial no later than 180 days is not a speedy trial right of a defendant. Regardless, the State complied with the statutory mandate.

On March 16, 1994, Judge Missouri postponed the case until April 19, 1994. On April 19, 1994, Judge Melbourne postponed the case until May 9, 1994. The critical postponement in this case was on March 16, 1994 because that was the postponement carrying the trial date past the 180 day limit. *Marks*, 84 Md.App. 269, 578 A.2d 828; *see also Rosenbach v. State*, 314 Md. 473, 479, 551 A.2d 460, 463 (1989). Appellant does not claim that the administrative judge abused his discretion or lacked good cause in granting a postponement on that date. Rather, he alleges that the trial judge's postponement on April 19, 1994 was improper. Appellant's allegation lacks merit because, once the administrative judge finds "good cause" and grants a trial date beyond the 180 day period, the statutory limitation does not control subsequent changes except to preclude an inordinate delay in subsequently bringing the case to trial, which was not the case here. *See Cook*, 322 Md. at 98, 585 A.2d 833.

The delay in obtaining the laboratory report was due partly to appellant's father, James Robert Tapscott, leaving the State on vacation and not being available for blood testing. Consequently, the laboratory had to use blood only from G.R. and appellant. Pursuant to Md.Rule 4–263(d), in a criminal case, the State may obtain blood samples from the defendant. Additionally, Md.Code Ann., Crt. & Jud.Proc., § 10–915(b) (1989 Repl.Vol.) allows the evidence of DNA profile "to prove or disprove the identity of any person." Without the blood

testing results, the State would be unable to prove the incest counts. The State's need to obtain crucial evidence that could not reasonably have been obtained earlier is sufficient good cause for a postponement. *See Marks,* 84 Md.App. at 277, 578 A.2d 828. Consequently, the evidence clearly established good cause for the continuance beyond the 180 day deadline, and there was no error in the short delay once the critical time limit passed.

Based on this information, the administrative judge properly found good cause and set the trial beyond the 180 day limit.

## B. Constitutional Claim

■ Appellant also argues that he was denied his right to a speedy trial under the Sixth Amendment to the U.S. Constitution.[5] At trial, appellant did not raise his constitutional right to a speedy trial, and the trial court never addressed the issue. Therefore, appellant has waived his right to a speedy trial. *Marks,* 84 Md.App. 269, 578 A.2d 828. Because appellant did not raise this issue below, he has not preserved it for our review. Md.Rule 8–131(a).

■ Even if the appellant had preserved this claim, he would not succeed. The Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), identified four factors the court must consider to determine whether a person has been deprived of the speedy trial guarantee: the length of delay, the reason for the delay, the defendant's assertion of his right,[6] and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192.

■ The first factor presents a threshold question of whether "the delay is of constitutional dimension, a delay

---

**5.** Amendment VI of the U.S. Constitution provides: In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . . .

**6.** Failure to assert the constitutional right weakens a defendant's ability to prove a denial of a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

which is presumptively prejudicial." *Marks,* 84 Md.App. at 281, 578 A.2d 828, citing *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The *Barker* Court further explained:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.

*Id.* (footnote omitted); *See Lee v. State,* 61 Md.App. 169, 485 A.2d 1014 (1985). The time required for the orderly processing of a case does not constitute a delay of constitutional dimension. *Borgen v. State,* 58 Md.App. 61, 73, 472 A.2d 114 (1984); *Powell v. State,* 56 Md.App. 351, 358, 467 A.2d 1052 (1983). This case, having come to trial a few days beyond seven months, does not present a delay of constitutional dimension. Hence there is no need to analyze the other factors. Appellant was not denied his right to a speedy trial.

## II

### Sufficiency of the Child Abuse Counts

■ The State charged the appellant with two counts of child abuse under Md.Ann Code, article 27, § 35A.[7] Appellant

---

**7.** § 35A provides:

(a) Definitions.—(1) In this section the following words have the meanings indicated.

(2) "Abuse" means: (i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the child's health or welfare is harmed or threatened thereby; or

(ii) Sexual abuse of a child, whether physical injuries are sustained or not.

(3) "Child" means any individual under the age of 18 years.

(4) "Family member" means a relative of a child by blood, adoption, or marriage.

(5) "Household member" means a person who lives with or is a regular presence in a home of a child at the time of the alleged abuse.

(6)(i) "Sexual abuse" means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member.

submits that the trial court should have granted his motion to dismiss the first two counts of the indictment charging him with child abuse because they failed to specify the age of the victim. The two counts read substantially as follows:

... that Robert Allan Tapscott ..., between June, nineteen hundred and ninety one, and September, nineteen hundred and ninety-one, ... having responsibility for supervision of [K.C.], a minor child under the age of eighteen years, did cause abuse to said minor, in violation of Article 27, Section 35A of the Annotated Code of Maryland, 1957 edition, as amended, and against the peace, government and dignity of the State. (Child Abuse)

Each count identified the victim as "a minor child under the age of eighteen years, ..."

To support his claim, appellant cites *Smith v. State*, 62 Md.App. 670, 491 A.2d 587 (1985). *Smith* is inapposite. The defendant in *Smith* was charged with child abuse in an information that referred to "a minor child under the age of eighteen." This court ruled that the information failed to state an offense because the law in effect at the time of the alleged abuse defined a minor as one who was less than sixteen years old. *Id.* at 678–79, 491 A.2d 587.

---

(ii) "Sexual abuse" includes, but is not limited to:
1. Incest, rape or sexual offense in any degree;
2. Sodomy; and
3. Unnatural or perverted sexual practices.

(b) *Violation constitutes felony; penalty; sentencing.*—(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary for not more than 15 years.

(2) If the violation results in the death of the victim, the person is guilty of a felony and upon conviction is subject to imprisonment for not more than 20 years.

(3) The sentence imposed under this section may be imposed separate from and consecutive to or concurrent with a sentence for any offense based upon the act or acts establishing the abuse. (1984, ch. 296, § 4; 1990, ch. 604; 1991, chs. 184, 372.)

 To fulfill the constitutional requirement in Art. 21 of the Maryland Declaration of Rights, an indictment must inform the individual charged with a crime of the accusation against him so that the accused can know the specific conduct with which he is charged and thereby avoid another prosecution for the same offense. *Williams v. State*, 302 Md. 787, 791, 490 A.2d 1277 (1985). In *Jones v. State*, 303 Md. 323, 326, 493 A.2d 1062 (1985), the Court of Appeals explained:

> A primary purpose to be fulfilled by a charging document under the Maryland Law is to satisfy the constitutional requirement of Article 21 of the Declaration of Rights that each person charged with a crime be informed of the accusation against him, first, by characterizing the crime and, second, by so describing it as to inform the accused of the specific conduct with which he is charged.

> Maryland Rule 4–202(a), implementing the constitutional mandate, requires that a charging document "shall contain a concise and definite statement of the essential facts of the offense with which the defendant is charged and, with reasonable particularity, the time and place the offense occurred." In denying Tapscott's motion to dismiss, the trial court noted that generally when an indictment tracks the language of the statute it has been held to be sufficient to put the defendant on notice of the charges.

 As long as the indictment sets forth the essential elements of the offense charged, it is sufficient. *Jones v. State, Id.* at 336–357, 493 A.2d 1062. If there was any question about the specific age of the victim, the appellant could have demanded a bill of particulars pursuant to Md.Rule 4–241. *See State v. Morton*, 295 Md. 487, 495, 456 A.2d 909 (1983); and *Guy v. State*, 91 Md.App. 600, 605 A.2d 642 (1992). Indeed, as the trial court noted, the victim was a minor under the age of eighteen. In this case, the indictment, which tracked the language of the statute by alleging that K.C. was "a minor child under the age of eighteen years," was adequate.

## III

### Sufficiency of the Incest Counts

 Pursuant to Md.Ann.Code, art. 27, § 335 (1992 Repl. Vol.), the State also charged the appellant with two counts of incest.[8] Appellant alleges that the incest counts should have been dismissed because they did not allege the specific degree of consanguinity.[9] The indictments read as follows:

> ... that Robert Allan Tapscott ... between June, nineteen hundred and ninety-one and September, nineteen hundred and ninety-one, ... did knowingly have carnal knowledge of [K.C.], and thusly being within the degrees of consanguinity within which marriages are prohibited by law of this State, in violation of Article 27, Section 335 of the Annotated Code of Maryland, 1957 edition, as amended, and against the peace, government and dignity of the State. (Incest)

Because the incest statute refers to "the degrees of consanguinity within which marriages are prohibited by law in this State," and the statute governing prohibited marriages refers to "certain marriages within other degrees of affinity or consanguinity", the appellant claims he would not know from the indictment which prohibited relationship he transgressed.

---

**8.** Md.Ann.Code, art. 27, § 335 (1992 Repl.Vol.) provides:

Every person who shall knowingly have carnal knowledge of another person, being within the degrees of consanguinity within which marriages are prohibited by law in this state, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the penitentiary for a term not less than one nor more then ten years, in the discretion of the court.

One looks to Md. Fam. Law Code Ann. § 2–202 (1991 Repl.Vol.) to determine a prohibited marriage. Section 2–202(b) prohibits marriages within three degrees of direct lineal consanguinity or within the first degree of collateral consanguinity, i.e. grandparent, parent, child, sibling or grandchild. Also prohibited under § 2–202(c) are certain marriages within other degrees of affinity or consanguinity (although the statute does not specify the degrees). Section 2–202(b) provides, *inter alia,* that a man may not marry his sister's daughter.

**9.** "Consanguinity" is defined as "kinship; blood relation; the connection or relation of persons descended from the same stock or common ancestor." *Black's Law Dictionary,* 375 (4th ed. 1968).

This Court has stated repeatedly that references to the statute alleged to be violated incorporate the elements of the statutory offense "... as though the section has been set forth in full in the indictment." *Russell v. State,* 69 Md.App. 554, 559, 518 A.2d 1081 (1987) (quoting *Whitehead v. State,* 54 Md.App. 428, 445, 458 A.2d 905 (1983). As we stated when discussing the sufficiency of the child abuse counts, it is enough to inform the person of the accusation against him so that he can avoid another prosecution for the same offense. *See Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985).

Having referenced the applicable statute, the indictment averred the essential elements of the crime in accordance with *Williams.* Furthermore, as with the age of the victim, the appellant could have obtained the specific information from a bill of particulars or through discovery. *See Guy,* 91 Md.App. at 610–11, 605 A.2d at 647 (1992).

## IV

### DNA Evidence

To prove the charges of incest, the State had to produce scientific facts about the relationship of the accused to the victim. As stated in Section I (Speedy Trial), the DNA evidence was admissible to prove the relationship between appellant and the victim. Md.Code Ann., Cts. & Jud.Proc., § 10–915 (1992 Repl.Vol.); *Jackson v. State,* 92 Md.App. 304, 323, 608 A.2d 782 (1992).

Section 10–915(b) of the Cts. & Jud.Proc. Article requires a party to provide to the opposing party a list of information, upon written request. If a party is unable to provide the information within 30 days prior to the criminal proceedings, the court may grant a continuance to permit timely disclosure. Md.Code Ann., Cts. & Jud.Proc., § 10–915(b) (1992 Repl.Vol.). Upon receipt of the DNA results, appellant requested a protocol explaining how the DNA tests were conducted. Prior to trial, appellant requested that the DNA results be excluded from evidence. Rather than exclude the evidence, the court

postponed the trial to give defense counsel an opportunity to obtain and review the additional material.

When, during the trial, appellant again requested that the DNA evidence be excluded, the trial court denied the motion to suppress, concluding:

And an indication from the witness was . . . all the information required by the Statute has been provided to Counsel. And there is no complaint that it has not been provided within thirty days, except for the additional information, which is not information required to be given the defense within the thirty-day period.

Appellant posits that, because the State did not disclose the DNA information within the statutory time limits of Md.Code Ann., Cts. & Jud.Proc. Article, § 10–915, the trial court committed error in admitting the testimony of the DNA expert.[10]

The record is void of any evidence contradicting the court's findings. Upon receipt of the DNA results, which were delivered within the thirty-day period, appellant requested the protocol, which was additional information. There is no indication in the record that appellant was supposed to receive information that he did not get. Regardless, even if appellant were improperly deprived of the additional information within thirty days, pursuant to Md.Code Ann., Cts. & Jud.Proc., § 10–915(c), the remedy would not be to exclude the DNA results, but, rather to continue the case, which is precisely what the trial court did.

 Appellant further complains that the DNA expert, Francis Chiafari, over objection, was allowed to testify. Appellant argues that, because Chiafari's former experience dealt with direct relationships (father and child), he was not qualified to explain the probabilities of persons being related as siblings, and that he based his testimony on false premises, i.e.

---

10. Appellant claims that both the HLA testing and the DNA testing were "terribly harmful to the charges of incests." However, he seeks reversal only on the failure of the trial court to exclude the DNA evidence.

he was not told that the defendant's paternal grandmother, mother and father had American Indian blood.

Appellant made no objection to the testimony during the trial on the ground that the evidence was based on inaccurate facts. Md.Rule 4–323(a). Therefore, appellant did not preserve the latter claim for appeal. Md.Rule 8–131(a).

Even if appellant had preserved this issue for our review, he would not prevail. Defense counsel challenged the basis of the opinion by fully exploring the possibility of appellant having mixed ancestry. Chiafari testified that, if the father was of mixed blood, his calculations would be "thrown off." The adequacy of the basis for an expert's opinion usually, but not always, goes to the weight to be given to the testimony. What appellant's ethnic background is and the effect that would have on the expert's conclusions are the subject of credibility to be determined by the jury. The expert had reasonably reliable information upon which to base his conclusion. *Radman v. Harold,* 279 Md. 167, 367 A.2d 472 (1977).

The trial court exercises broad discretion to determine whether a particular witness is qualified to give an opinion. *Simmons v. State,* 313 Md. 33, 43, 542 A.2d 1258 (1988); *Trimble v. State,* 300 Md. 387, 404, 478 A.2d 1143 (1984). This evidence is the proper domain of blood testing experts and DNA specialists. The witness was sufficiently qualified from his knowledge, skill, experience, training, and education to give opinions that would assist the trier of fact. The trial court did not err in allowing the testimony of the DNA expert.

## V

### Scope of Cross-examination

Over appellant's objections, Terry Houtz, the blood testing expert, testified that "more likely than not" appellant and K.C. were related, but he could not specify the degree of their relationship. Appellant's counsel attempted to cross-

examine Houtz about a letter he had sent to Tapscott's sister in response to her phone call asking his opinion on the minimum number of people who would need to be tested to determine paternity. In the letter, Houtz explained that, to determine paternity of a deceased man's children, blood would be needed from the mother and at least two of the siblings. At trial, Houtz based his opinions on blood drawn from appellant and the victim's mother.

Appellant's counsel conceded during the trial that the letter "goes just to DNA." The letter was marked for identification but was not admitted into evidence. The trial court prevented the defendant's counsel from cross-examining the expert on this alleged contradiction.

The trial court ruled that the letter was not relevant to HLA testing; it addressed DNA testing, which was not within the scope of Houtz's expertise. The trial court has broad discretion to admit or exclude expert testimony, and should not admit testimony of an expert when that testimony concerns a field inappropriate for the expert. *See Hartless v. State*, 327 Md. 558, 573, 611 A.2d 581, 588 (1992). Accordingly, the trial court properly controlled the scope of cross-examination.

## VI

### Tape Recorded Conversation

Tapscott claims that the trial court erred when it admitted the taped telephone conversation between K.C. and him. He contends the recording was illegal because the State failed, as required by Md.Code Ann., Cts. & Jud.Proc., § 10–411(a) (1992 Repl.Vol.) to register the recording equipment before using it to record the conversation in this case.[11]

---

11. Md.Code Ann., Cts. & Jud.Proc., § 10–411(a) (1992 Repl.Vol.), states that certain intercepting devices "shall be registered within ten days from the date on which the devices came into possession or control of the agency, their employees or agents."

Sergeant David Dunn purchased the device on September 9, 1993. The next day he used it to record the conversation. Later that same day, he mailed his request for registration. The statute mandates registration, not before the law enforcement agency uses the equipment, but "within ten days from the date on which the devices came into the possession or control of the agency. . . ." The trial court did not err in admitting the taped conversation.

## VII

### Jury Instruction

The indictment charged that appellant, "having responsibility for supervision of [K.C.] . . . did cause abuse to said minor child, in violation of Md.Ann.Code, art. 27, § 35 A (1992 Repl.Vol.)." Appellant claims that the trial judge improperly amended the indictment when he instructed the jury that they could convict appellant of Counts I and II (child abuse) if they found appellant to be a person who had "permanent or temporary care or custody of a child", when the indictment charged appellant with only being a person having "responsibility for the supervision" of the child.[12] Defense counsel objected to the Court's instructions and to the verdict sheet, which included special questions as follows:

**Count I. Child Abuse (at the home)**

(1) Has the State proven beyond a reasonable doubt that the Defendant was either a person who had temporary custody or control of [K.C.], or a person who had responsi-

---

12. In its instruction on child abuse, the trial court explained:

So the Legislature has designated basically five classes of people who can commit the crime of child abuse. And they are a parent; a person who has temporary care or custody of a child; a person responsible for the supervision of a child; a household member; a family member.

The court further explained that, with respect to this case, the State was required to prove that "the Defendant had permanent or temporary care, custody or responsibility for the supervision of [K.C.] . . . or that the Defendant was a relative of [K.C.] by blood, adoption or marriage."

bility for the supervision of [K.C.], or was related by blood to [K.C.] (a family member)?

**Count II. Child Abuse (at the hotel)**

(1) Has the State proven beyond a reasonable doubt that the Defendant was related by blood to [K.C.] (family member)?

 Maryland Rule 4–204 provides, in part, that a court "at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required."[13] "Amendments" contemplated by this Rule are changes, alterations, or modifications to an existing charge in an existing charging document. *Tracy v. State,* 319 Md. 452, 456–457, 573 A.2d 38 (1990). Matters relating to the character of the offense are those facts that must be proved to make the act complained of a crime. *Corbin v. State,* 237 Md. 486, 489–490, 206 A.2d 809 (1965); *see also Manuel v. State,* 85 Md.App. 1, 18, 581 A.2d 1287 (1990). An indictment may be corrected without the defendant's consent if the amendment does not alter any of the elements of the offense and results in no prejudice.

The trial judge's recital of Section 35A of Article 27 in its entirety, standing alone, was not an amendment of the indictment. Nor did the judge's statements constitute other error because they were not so misleading as to create a danger that the jury convicted appellant of a crime not charged.

The verdict sheet, however, permitted the jury to find the appellant guilty of child abuse if they found that appellant had permanent or temporary care or custody *or* responsibility for the supervision of the child. The statute specifies as one of the elements of the offense of child abuse that such abuse can be committed "by any parent or other person who has permanent or temporary care or custody or responsibility for super-

---

**13.** Under the former Rule 713b, an indictment could be amended without consent of the parties so long as the amendment did not change "the substance of the indictment".

vision of a child, or by any household or family member . . .".
These alternatives are in the disjunctive, setting forth several
different classes of people who fall within the proscriptions of
the statute. *See Pope v. State*, 284 Md. 309, 396 A.2d 1054
(1979) (a person having "responsibility for the supervision" of
a child is clearly different than a person having "permanent or
temporary care of a child.")

 Art. 27, § 35A is a statute that proscribes several
different types of conduct, by several categories of people,
from which can be constructed separate statutory offenses for
double jeopardy purposes. It is not a single offense. *See
Nightingale v. State*, 312 Md. 699, 706, 542 A.2d 373 (1988).

 If the State was unsure about the circumstances
under which the sexual activity occurred, it could have gener-
ally charged appellant under the statute. When construing
the rule established in *Leon v. State*, 180 Md. 279, 23 A.2d 706
(1942), the court in *Morrissey v. State*, 9 Md.App. 470, 475–
476, 265 A.2d 585 (1970) stated:

> When a statute creates an offense and specifies several
> different acts, transactions, or means by which it may be
> committed, an indictment for violation thereof may properly
> allege the offense in one count by charging the accused in
> conjunctive terms with doing any or all of the acts, transac-
> tions, or means specified in the statute. *See also Ayre v.
> State*, 21 Md.App. 61, 65, 318 A.2d 828 (1974).

When the State delineated the particular section of the stat-
ute, however, it charged only the conduct and circumstances
proscribed by that section, and, absent appellant's consent,
was barred from later amending the indictment to charge
different circumstances. *See Beckwith v. State*, 320 Md. 410,
414–415, 578 A.2d 220 (1990) (where State may charge a
violation of two subsections by referring only to the general
section in the charging document, it loses that option by
specifying one of the two subsections).

The individual questions posed by the verdict sheet, coupled
with the jury instruction, allowed the jury to convict appellant
of a crime for which he was not charged. The verdict sheet

included the alternate circumstances rather than the one for which appellant was charged, therefore we cannot tell whether he was convicted of the crime for he was charged or some other crime, not charged.

Although appellant was entitled, under Md.Rule 4–241, to a bill of particulars to determine the exact nature of the charges against him, a reasonable defendant would conclude that he was being charged only with the offense that was specifically charged. The jury instruction and verdict sheet which altered the crime alleged to have been committed violated the appellant's constitutional right to be informed of the accusation against him in time to prepare his defense.

## VIII

### Sufficiency of Evidence

Appellant argues that the trial court erred in denying appellant's motion for judgment of acquittal because, as a matter of law, there was insufficient evidence to support his convictions of incest and child abuse. As the reviewing court, we are not asked whether we believe that the evidence at the trial established guilt beyond a reasonable doubt; rather, we merely ask whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State*, 319 Md. 530, 535, 573 A.2d 831 (1990).

### A. Incest

Appellant contends that, as a matter of law, there was insufficient evidence to establish the requisite degree of consanguinity between K.C. and himself and, therefore, that the evidence was insufficient to support his incest convictions. Pursuant to Maryland Rule 4–324(a), a defendant is "required to argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient." *Fraidin v. State*, 85 Md.App. 231, 244–45, 583 A.2d 1065 (1991). Further, the defendant is

bound by the grounds raised below; arguments not presented to the trial court in support of a motion for judgment of acquittal are not preserved for appellate review. *Graham v. State,* 325 Md. 398, 416–17, 601 A.2d 131 (1992); *Graves v. State,* 94 Md.App. 649, 684, 619 A.2d 123 (1993).

■ At the close of the State's case in chief, defense counsel argued, as to the incest charges, that the evidence "would not be voluntary or consensual vaginal intercourse, but rather force or fraud" and that this would "be a different crime." Counsel said nothing about the evidence regarding degrees of consanguinity. At the close of all the evidence, counsel simply renewed his earlier motion. Consequently, Tapscott's current claim regarding consanguinity is unpreserved.

Regardless, there was sufficient evidence to convict appellant of incest. Pursuant to Md.Ann.Code, art. 27, § 335 (1992 Repl.Vol.), a person is guilty of incest if he knowingly has "carnal knowledge of another person, being within the degrees of consanguinity within which marriages are prohibited by law in this State ..." Md.Code Ann., Fam.Law, § 2–202 (1992 Repl.Vol.) provides, in part, that "a woman may not marry her ... mother's brother." Md.Code Ann., Fam.Law, § 2–202(c)(2)(iv) (1992 Repl.Vol.).

■ Appellant argues that he does not fall within the prohibited degrees of consanguinity because Section 2–202 does not include any reference to relationships of the half blood. There is no Maryland case that has decided whether a half blood relative is to be treated on par with a whole blood relative in a prosecution for incest under the Maryland statute. The decisions in other states, however, support that the Maryland incest statute should be construed to include relatives of the whole and half blood.

In *Singh v. Singh,* 213 Conn. 637, 569 A.2d 1112, 1114 (1990), the Supreme Court of Connecticut considered whether marriage between a half uncle and half niece was incestuous under that State's statutory scheme and found that historically, relationships of the half blood barred marriage equally with

relationships of whole blood. The Supreme Court of Connecticut further held that statutes that do not contain any express distinction between whole and half blood should be construed to apply to both. *Compare People v. Baker,* 69 Cal.2d 44, 69 Cal.Rptr. 595, 442 P.2d 675 (1968) and *State v. Craig,* 254 Kan. 575, 867 P.2d 1013 (1994) (where the statute at issue explicitly prohibits marriages between certain, specified persons related by the half blood (i.e., half sister, half brother), the statute is construed not to prohibit marriage between persons of the half blood where there is no express prohibition (i.e., uncle)).

In *State v. Lamb,* 209 Iowa 132, 227 N.W. 830 (1929), the Supreme Court of Iowa considered whether a defendant, who was the half uncle of the victim, was guilty of incest pursuant to the relevant statutes of Iowa, which prohibited carnal knowledge between a man and his sister's daughter. The Supreme Court of Iowa held that since half blood relations were contemplated within this statute, the defendant fell within the prohibited degrees of consanguinity.[14] *Id. See also Commonwealth v. Ashey,* 248 Mass. 259, 142 N.E. 788 (1924) (court held a defendant, who was charged with incest of his half niece, fell within the statutory prohibition providing that no man shall marry his . . . sister's daughter.); *Shelly v. State,* 95 Tenn. 152, 31 S.W. 492, 493 (1895) (where defendant was charged with incestuous intercourse with the daughter of his half sister, the court held that the offense would be the same as if she had been the daughter of a full sister).

The Maryland marriage statute, which in turn dictates the incest statute, does not specifically prohibit marriage between any half blood relatives. Rather, it states that "a woman may not marry her . . . mother's brother." Md.Fam.Law Code Ann. § 2–202(c)(2)(iv). It therefore should be construed, in accordance with the weight of authority, to encompass the

---

**14.** The Iowa incest statute has been revised to read in part: "A person,...., who performs a sex act with another whom the person knows to be related to the person, either legitimately or illegitimately, as an ancestor, descendant, brother or sister of the whole or half blood, aunt, uncle, niece, or nephew, commits incest." Iowa Code Ann. § 726.2 (1993).

relationship at issue here. This interpretation is consistent with the rationale behind punishing incest: first, to avoid the danger of biological mutations that might occur in the issue of such relationships and second, to protect children from the abuse of parental authority. *People v. York,* 29 Ill.App.3d 113, 329 N.E.2d 845 (1975). This interpretation is compatible with Maryland probate law, which does not distinguish between relatives of half blood and whole blood.[15] We find this indicative of the Maryland Legislature's intent to treat relations of the half blood the same as relations of the whole blood. In order to be consistent with probate law, the incest statute should be construed as including with probate law, the incest statute should be construed as including relatives of half blood. *See State v. Wilson,* 524 N.W.2d 271, 274 (Minn.1994).

The jury had sufficient evidence to find that K.C. was appellant's half niece by blood. At trial, K.C.'s mother, G.R., testified that she located her father, James Robert Tapscott, who informed her that appellant was her half brother.[16] The State presented pictures of James Robert Tapscott with G.R.'s two children which were taken after G.R. located her father.

More important, the State presented a report from Baltimore Rh Typing Laboratory, which included both HLA and DNA testing results from samples taken from K.C.'s mother and appellant.[17] The report concluded that the probability of half-sibship between G.R. and appellant was 99.86% and the odds ratio comparing the probability of half-sibship to the probability that random individuals would yield the observed types was 727 to 1. The State also presented K.C.'s birth certificate, which indicated that G.R. is K.C.'s mother.

---

15. Md.Code Ann., Est. & Trusts § 1–204 (Repl.Vol.1974) provides that a relative of half blood has the same status as a relative of the whole blood.

16. The State presented G.R.'s and appellant's birth certificates which both named James Robert Tapscott as the father.

17. Samples were taken on February 2, 1994 and the test results were verified by Francis Chiafari, Supervisor of the Baltimore Rh Typing Laboratory.

In addition to the evidence proving that there was a familial relationship between the appellant and K.C., the State also presented sufficient evidence that the two engaged in sexual intercourse. The State presented a transcribed recording of a conversation between K.C. and appellant in which the two discussed their prior sexual activity.[18] K.C. stated, "I could've begged for it! I could've said, Sonny, have sex with me now. You never should have done it. You should've never done it with me. We're flesh and blood". Appellant answered,

I'm not sayin' that it's right. I'm not trying to make excuses for myself. Only thing I can say is I'm human like everybody else. Everybody makes mistakes and I don't want to go into great detail here as to how it transpired or how I recall it transpired.

During her testimony, K.C. described the two times that she and appellant engaged in sexual intercourse. The State presented pictures of the hotel and the house, both of which were places where the alleged crimes took place.

Based on the evidence presented at trial, we find that there was sufficient evidence from which a rational trier of fact reasonably could have concluded that appellant was guilty of incest.

### B. Child Abuse

■ Appellant also challenges the sufficiency of the evidence to support both convictions of child abuse (Count I—the home and Count II—the hotel). A rational trier of fact had sufficient evidence to find that appellant was guilty of both these counts beyond a reasonable doubt. *McMillian v. State,* 325 Md. 272, 289, 600 A.2d 430 (1992); *Owens v. State,* 93 Md.App. 162, 163–65, 611 A.2d 1043 (1992).

Pursuant to Md.Ann.Code, art. 27, § 35A, (Repl.Vol.1992), a person is guilty of child abuse if one is a parent or other person who has permanent or temporary care or custody or

---

18. The electronic eavesdropping device was registered to the Prince George's County Police effective September 10, 1993.

responsibility for supervision of a child, or by any household or family member, who sexually abuses a child.[19] Appellant alleges that there was insufficient evidence to prove his conviction on the child abuse counts one and two because the State was limited by the indictment to proving that he had the responsibility for K.C.'s supervision at the time of the offenses. Appellant argues that since there was no evidence of mutual consent, necessary under *Pope v. State*, 284 Md. 309, 396 A.2d 1054 (1979), to prove that appellant was responsible for the supervision of K.C., there was insufficient evidence to prove the child abuse counts. *See Pope v. State*, 284 Md. at 323, 396 A.2d 1054 (absent a court order or award by some appropriate proceeding pursuant to statutory authority, responsibility for supervision of a minor child may be obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility).

Appellant's argument is without merit. There was sufficient evidence to prove both counts of child abuse. At the time of both sexual encounters, K.C. was under the age of eighteen and legally a child. G.R., her mother, was legally charged with her care. The State also presented evidence that K.C. was a minor and that appellant was K.C.'s half uncle. In addition to G.R.'s testimony regarding her familial relationship with appellant and the State's presentation of pictures of appellant with the victim, two experts testified establishing the blood relationship between appellant and G.R.

The State also presented sufficient evidence to prove that appellant fell within that class of persons to whom the child abuse statute applies. Appellant accepted responsibility for K.C.'s supervision by agreeing to pick up K.C. after work and have her spend the night at his house so that he could take

---

**19.** "Sexual abuse" means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by an household or family member. Md.Ann.Code, art. 27, § 35 A(a)(6), (Repl.Vol.1992).

her to a job interview the following morning. *See Pope* at 323–324, 396 A.2d 1054 (parent may not impose responsibility for the supervision of his or her minor child on a third person unless that person accepts the responsibility). G.R. testified as to her understanding of the arrangement. Appellant argues that G.R.'s testimony was inadmissible hearsay, but Appellant's own testimony acknowledged the arrangement, rendering the hearsay harmless.

The State also presented sufficient evidence that appellant had responsibility for K.C.'s supervision when he had sexual intercourse with her at the hotel (Count Two). Although there was no agreement between her mother and appellant that K.C. was to stay with appellant, it was clear that appellant was to act as K.C.'s supervisor. In addition to being K.C.'s half uncle, appellant was entrusted with K.C.'s care on numerous occasions. Appellant previously acted as a surrogate parent by babysitting and driving K.C. to and from places. Both K.C. and her mother reasonably considered appellant to be a supervisor of K.C. whenever he and K.C. were together.

There was also sufficient evidence that appellant engaged in sexual intercourse with a minor. K.C. testified that she and appellant had sexual intercourse and that he performed oral sex on her on two separate occasions: one at his home and another in a hotel room. In addition, the State presented evidence by way of a recorded telephone conversation in which appellant acknowledged that he engaged in sexual intercourse with K.C.

## IX

### Selective Prosecution

Appellant's final claim is that he was selectively prosecuted by the State because only he was charged with incest and not

K.C.[20] He further alleges that he was selectively prosecuted for all four crimes because of his status as a police officer.

 It is well settled that a State's Attorney possesses "broad official discretion to institute and prosecute criminal cases." *Brack v. Wells*, 184 Md. 86, 40 A.2d 319 (1944). It is only in limited circumstances, where the prosecutor has deliberately based the prosecution upon an unjustifiable standard, such as race, religion, or other arbitrary classification, that the prosecutor's decision to prosecute can violate the equal protection clause. *See Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).[21]

 Appellant timely made an oral motion to dismiss based on selective prosecution of all four claims. Defense counsel asserted that if appellant and K.C. fell within the prohibited degrees of consanguinity for the purposes of Section 2–202, then they should both be considered guilty of incest. After careful review of the facts, the trial court properly denied the motion concluding:

> Suffice it to say that I don't believe there is any evidence from which I can find in support of this motion that the decision to prosecute defendant was based on impermissible considerations, invidious considerations, or arbitrary considerations. And, accordingly, I'm going to deny the motion to dismiss based on selective prosecution.

It is clear that the State's Attorney acted within the bounds of his broad discretionary power in choosing to prosecute appellant, a thirty-seven year old adult, and electing not to

---

**20.** Appellant's counsel moved to dismiss the incest charges on the ground that appellant was subject to selective prosecution. The court denied the motion.

**21.** Several cases address the topic in varying contexts. *See, e.g., Bourexis v. Carroll County Narcotics Task Force*, 96 Md.App. 459, 470–471, 625 A.2d 391 (plea bargaining process; *Middleton v. State*, 67 Md.App. 159, 169–72, 506 A.2d 1191 (decision to pursue mandatory sentence for a subsequent offender); *Giant of Md., Inc. v. State's Attorney*, 267 Md. 501, 517, 298 A.2d 427 (decision to prosecute for violation of Sunday Blue Laws).

prosecute a seventeen year old minor. *See Purohit v. State,* 99 Md.App. 566, 577, 638 A.2d 1206 (1994). To prosecute K.C. on incest charges would be flatly inconsistent with the legislative determination that a 17–year–old may be a child abuse victim.

Appellant's argument that he was selectively prosecuted for all four crimes based on his status as a police officer is also without merit. "The propriety of a prosecution does not depend upon the prosecution or lack of prosecution of others who may qualify for prosecution for the same acts." *Middleton v. State,* 67 Md.App. 159, 171, 506 A.2d 1191 (1986). Appellant's argument that the following statement made by the prosecutor when arguing against the Motion to Dismiss is evidence of selective prosecution is specious:

After reviewing all of the information provided to myself and to other members of my office, the State has made an election to prosecute Sergeant Tapsott, NOT NECESSARI-LY (sic) because of his rank or position with the Prince George's County Police Department but because we felt he was the most culpable.

The Supreme Court in *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962) concluded that the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation; selective prosecution must be both deliberate and based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Appellant has offered no support for his allegation that the State selectively prosecuted him based solely on his status as a police officer.

JUDGMENTS AFFIRMED AS TO INCEST CHARGES AND VACATED AS TO CHILD ABUSE CHARGES. APPELLANT TO PAY 80% AND PRINCE GEORGE'S COUNTY TO PAY 20% OF COSTS.