66 A.3d 698

**STATE of Maryland**

v.

**Tyres Kennard TAYLOR.**

**No. 60, Sept. Term, 2012.**

Court of Appeals of Maryland.

May 21, 2013.

---

616

618

Michelle W. Cole, Assistant Attorney General, (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Petitioner/Cross–Respondent.

Jeffrey M. Ross, Assistant Public Defender, (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Respondent/Cross–Petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

We are confronted here with the need to determine whether pre-trial statements made by, and on behalf of, Tyres Kennard Taylor on the morning of the commencement of his retrial (and thereafter) should have been construed by the trial court

as requests to discharge his counsel under Maryland Rule 4–215(e), or merely as a request for a continuance. Pursuant to that Rule, a court must allow a defendant to discharge his or her counsel if the court, after providing the defendant an opportunity to explain his reasons, finds that such a request is meritorious. Taylor claims that the Circuit Court for Baltimore City (in the persons of a number of its judges) failed to comply with the mandate of Rule 4–215(e) and violated his constitutional right to counsel of his choice when, in separate pre-trial hearings before that court, Taylor was denied permission to discharge his counsel (an assigned public defender) after he made several purported requests to do so and replace the assigned counsel with a quite recently privately-retained attorney, whose representation was contingent on a seven-to-ten-day postponement of trial. Taylor was tried, represented by his previously-assigned Assistant Public Defender, and convicted. After Taylor appealed to the Court of Special Appeals, which concluded that the trial court violated Taylor's rights under Rule 4–215(e) and his constitutional rights with regard to counsel of his choosing, the State filed a timely Petition for Writ of Certiorari with this Court, which we granted. For reasons to be explained, we shall reverse the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL HISTORY

The evidence adduced at Taylor's re-trial reveals that, on 17 May 2007, at approximately 2:00 a.m., police responded to reports of a shooting at the area around 200 Dallas Court, Baltimore. They found there Robert Perlie, lying face down, with a gunshot wound to his head. He died from the gunshot. An investigation of the incident revealed that the murder had been committed during a robbery earlier that day.

Several months later, police arrested Tyres Kennard Taylor (and his accomplice, James Giles) as suspects. They were charged in the Circuit Court for Baltimore City with the murder and robbery of Perlie and the robbery of three other young men, among other charges. Taylor was assigned Assistant Public Defender Gil Amaral, Esquire, as his attorney in

the Perlie matters. At or about the same time, Taylor was charged with some unrelated crimes, for which Amaral was to represent him initially, but Leslie Stein, Esquire, replaced him as privately-retained counsel. The initial trial of Taylor in the Perlie matters was conducted in January 2010 and resulted in a hung jury and a mistrial was declared. Stein obtained a similar result in the initial trial of the unrelated charges. In the re-trial on the unrelated charges in May 2010, Stein achieved an acquittal of Taylor. Against this backdrop, Taylor's re-trial on the Perlie matters, where Amaral continued to represent him, was scheduled for trial on 8 June 2010.

The true crux of the present appeal begins with events that occurred on the morning of 8 June 2010, prior to commencement of Taylor's re-trial on the Perlie matters. On that morning, a postponement request hearing occurred before Judge Barry Williams of the Circuit Court for Baltimore City. Judge Williams, at the time, was a designee of the Administrative Judge for the purpose of entertaining requests for continuance.[1] Taylor was not present at the hearing. The State informed Judge Williams first that the reason that Amaral and the State agreed to the June 8 re-trial date originally was because the case had been postponed fourteen times over its history[2] and a witness for the State was available to testify at the re-trial only during the month of June. Stein was present also at the hearing. He informed Judge Williams that a family member of Taylor's had contacted him the night before to retain him to represent Taylor in the Perlie case. Stein requested the court to postpone the trial for ten days in order

---

1. The Administrative Judge of the Circuit Court for Baltimore City was and remains Judge Marcella A. Holland. At the time of the June 8 hearing, Judge Williams served as her designee. Under Md. Rule 4–271, designees of the Administrative Judge are authorized to entertain requests for continuance.

2. As of the June 8 hearing, there had been fourteen cumulative postponements of trial dates in the initial trial and the re-trial on the Perlie matters. Two of the postponements prior to the first trial of the Perlie murder-robbery case were requested by the defense. The re-trial case had been postponed four times by the time of the June 8 postponement hearing.

that he might prepare for his representation of Taylor. Judge Williams denied the request, stating that although he "generally would not have any problem with allowing counsel in[,] ... this [case] has been postponed too many times. This has been listed as a priority case." [3] Judge Williams sent the case to Judge David W. Young for trial.

The issue of Taylor's perceived desire to replace Amaral with Stein was revisited on 9 June 2010 before Judge Young,[4] where the State requested the court to return the case to the Administrative Judge or designee, prior to the commencement of the re-trial, in order to "resolve" Taylor's request for a postponement. Judge Young based his decision to return the case to the Administrative Judge (or designee) on Md. Rule 4–271 [5] and *Guy v. State,* 91 Md.App. 600, 611 n. 11, 605 A.2d 642, 648 n. 11 (1992), which provide that the Administrative Judge (or designee) has sole authority to "grant a postponement which would result in a trial date later than 180 days after arraignment or first appearance of counsel [*i.e.,* the *Hicks* date]."

---

**3.** Under Md. Rule 16–202(b)(1), a case is assigned "priority" status in the discretion of the County Administrative Judge. Each county and Baltimore City has a case management system "in which actions are classified according to complexity and priority and are assigned to a scheduling category based on that classification." Md. Rule 16–202(b)(1). The purpose of this kind of classification scheme is to effectuate a "prompt and efficient scheduling and disposition of actions in the circuit court." *Id.*

**4.** As noted, Judge Williams sent the case to Judge Young on June 8. A hearing occurred on that same day before Judge Young regarding an evidentiary issue, a matter not relevant to this case.

**5.** Md. Rule 4–271 provides, in pertinent part:
**(a) Trial Date in Circuit Court.**
(1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events.... If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

Judge Sylvester Cox, another designee of the Administrative Judge for the purpose of considering continuance requests, received the case on June 9. The following colloquy occurred:

[AMARAL]: In this situation, and I'm speaking on behalf of my client on this—and he can correct whatever things are not correct—I mean he does have a certain comfort level with Mr. Stein as a result of just having finished a trial with Mr. Stein. . . . So there's a comfort level there. And I know that the family was probably trying to come up with the funds to retain Mr. Stein, and that didn't happen until very—obviously until the day before trial.

So I'm in a situation where I'm ready for trial, but I understand my client's position with regard to wanting to have his choice of counsel. I don't—looking at the State's reasons, I don't know that we're looking at a long delay. . . .

[I]f the court sends us to court, you know, I'm ready to go. I think [Taylor's] request is a reasonable one based on all the circumstances. The family's retained Mr. Stein on this case now.

THE COURT: But you're in the case?

[AMARAL]: But I'm in the case.

THE COURT: And you're prepared to go to trial?

[AMARAL]: I'm prepared . . .

THE COURT: . . . And you're in the case, and you're ready to go to trial, [State]?

[STATE]: I'm ready to go to trial, Your Honor. We were about to pick a jury.

\* \* \* \* \* \*

THE COURT: Are you in the case, Mr. Stein?

[STEIN]: I'm only entering my appearance if the court will grant a one-week continuance.

THE COURT: I'm not so inclined. This case [is] from three years ago. This is a retrial. Mr. Amaral indicates he's prepared and ready to go to trial. [State] indicates [it's] prepared and ready to go to trial. Request is denied.

Judge Cox denied the requested continuance and returned the case to Judge Young for trial.

On June 10, the State asked Judge Young to resolve what it perceived to be Taylor's embedded request to discharge Amaral and retain Stein, asserting that, pursuant to Md. Rule 4–215, Taylor's request required the court to address that issue before proceeding to trial.[6] Judge Young asked Amaral whether the State's argument was "an issue" for him. The following exchange ensued:

[AMARAL]: Judge, I don't have any strong position on it one way or the other.

＊　　＊　　＊　　＊　　＊　　＊

. . . [T]he details of why Mr. Taylor wanted to replace me with Mr. Stein, I think were essentially summed up yesterday on the record, and that is that Mr. Stein had tried a murder case where Mr. Taylor was charged just recently and was able to successfully achieve an acquittal on that matter. And therefore Mr. Taylor felt comfortable and confident with Mr. Stein and that's why he wanted Mr. Stein to represent him on this case. Mr. Taylor, is that essentially the case, or am I missing anything?

[TAYLOR]: Um—that pretty much sums it up.

---

**6.** Although the State did not refer to a particular sub-section of Md. Rule 4–215, the context of the case indicates that the only provision that could have been at issue was Md. Rule 4–215(e), which states:

**(e) Discharge of Counsel—Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

[AMARAL]: Did I do anything while I was representing you in the first trial, which we got a mis-trial on or subsequent to that, did I do anything in the course of preparing for the retrial that you weren't satisfied with?

[TAYLOR]: No, as far as the first trial, it was just the fact that in this trial I just felt as though as far as litigating on the certain of law,[7] it seems to be the best of my knowledge as I can understand it, that's the only thing I just didn't see eye to eye with you on. But other than that, I had no problem, I was pleased with.

THE COURT: And you're willing to have Mr. Amaral represent you, is that correct?

[TAYLOR]: I mean, if I don't have any other choice, obviously.

THE COURT: Well, you went to postponement court. Judge Cox denied the postponement for Mr. Stein to come in. So your choices are to keep Mr. Amaral, who is ready, willing, and able to represent you, or discharge him which means you would represent yourself. Right? Do you understand that sir?

[TAYLOR]: Yes sir.

THE COURT: Alright. And so you're willing to have Mr. Amaral represent you, is that correct?

[TAYLOR]: Yes I do.

The *foregoing notwithstanding*, the State contended that the Md. Rule 4–215 issue still had not been resolved. It appearing that the parties had exhausted Judge Young's patience, the judge decided it would be better for the case to be tried by another judge. He passed the case to Judge John N. Prevas for trial on June 10. After providing the State and Amaral an opportunity to explain the tortured procedural route by which the case arrived in his courtroom, Judge Prevas stated that he

---

7. This appears in this opinion just as it appears in the transcript of the proceeding in the record. No party has sought to correct or supplement this in any way.

found no meritorious reason for granting Taylor's request to replace Amaral:

> THE COURT: Did Judge Young ever rule that there was no meritorious reason for the discharge?
>
> [THE STATE]: That's the issue that came up.
>
> THE COURT: Right. Well, I find there's no meritorious reason for the discharge. Mr. Stein is welcome to become counsel in this case. The only thing is he has to do it immediately, but because he's not prepared to come, then you're still his attorney.
>
> [AMARAL]: Correct.
>
> THE COURT: So he's never discharged you even if he seeks to because I'll only find meritorious, a discharge of you, [if] Mr. Stein immediately takes over and keeps the case on schedule. The case is too old for any continuances. So if he wants Stein and pays Stein, Stein can take [his] seat at the trial table, but you've always been counsel for the record. You've tried the first case, right?
>
> [AMARAL]: Yes.
>
> THE COURT: And there's no reason to discharge you.....

* * * * * *

> Nobody disputes that proffer that Judge Young had ever ruled on a Motion for Discharge. I ruled on it. I ruled there's no meritorious reason to discharge Mr. Amaral. I'm not preventing Mr. Stein from starting a case, but because Judge Cox denied the continuance, the only way Mr. Stein can start the case is to walk in here now and take over ... But Mr. Amaral's familiar with the case and can provide effectiveness of counsel Well, [Taylor] is perfectly welcome to have Stein. He just can't have Stein plus a postponement. He can only have Stein without a postponement.

The trial commenced. On 16 June 2010, a jury found Taylor guilty of first degree murder, second degree murder, attempted robbery, three counts of first degree assault, three counts of second degree assault, two counts of robbery with a

dangerous weapon, two counts of robbery, two counts of stealing a cellular phone valued at less than $500, three counts of conspiracy to commit robbery with a dangerous weapon, and four counts of use of a handgun during the commission of a felony or crime of violence.[8] Taylor was sentenced to life imprisonment, plus forty years, for these convictions.

Taylor appealed to the Court of Special Appeals on 23 August 2010. He argued that he had expressed to Judges Williams, Young, Cox, and Prevas his desire to replace Amaral with Stein, and that each judge failed to comply with Rule 4–215(e) when they did not inquire as to whether he had a meritorious reason for his request. Taylor contended also that the failures to comply with the Rule violated his constitutional right to counsel of his choice.[9] In an unreported opinion filed on 10 May 2012, the Court of Special Appeals agreed with Taylor and reversed his convictions, concluding that Judges Young and Prevas committed reversible error when they each addressed "the merits of Taylor's request without considering the reasons," as mandated by Md. Rule 4–215(e).

On 15 June 2012, the State filed a Petition for Writ of Certiorari, arguing that the intermediate appellate court's application of Md. Rule 4–215(e) was erroneous because Taylor did not request explicitly the court for permission to discharge Amaral. The State contended further that, even if Rule 4–215(e) was triggered by Taylor's communications with the court, the court did not fail to comply with the Rule's

---

**8.** Taylor was convicted on evidence that included the testimony of James Giles that, on 17 May 2007, he and Taylor encountered Perlie, Alonzo Plenty, Melvin Addison, and Keith Shaw at a BP gas station and agreed to rob them. With Giles as the driver, he and Taylor followed the group to the Douglas Projects in Giles' Cadillac Seville. Giles and Taylor jumped out of the car, Taylor brandishing a handgun. Shaw escaped as soon as he saw Giles and Taylor approach. Giles and Taylor robbed the other three at gunpoint. After ordering Perlie and Plenty to lie face down on the ground, Taylor shot Perlie and the duo fled the scene.

**9.** The Court of Special Appeals did not address this issue (or two other issues unrelated to the current appeal) raised by Taylor in that appeal because it decided that there was a violation of Md. Rule 4–215(e).

requirements. Taylor filed an Answer and conditional Cross–Petition for a Writ of Certiorari, averring that each judge's failure to follow Rule 4–215(e) after Taylor requested to discharge his counsel violated Taylor's right to counsel of his choice. We granted both petitions, *State v. Taylor*, 428 Md. 543, 52 A.3d 978 (2012), to consider collectively three questions:

1) Did the Court of Special Appeals apply incorrectly Md. Rule 4–215 where there was no request by the defendant for discharge of trial counsel and the only issue before the trial court was an administrative request for a continuance?

2) Did the Court of Special Appeals construe incorrectly MD Rule 4–215 when it found that the trial court violated the rule?

3) Did the lower court violate Respondent's constitutional right to representation by counsel of his choice?

We hold first, that, even assuming *arguendo* that the statements made to the trial court by Taylor, Amaral, and Stein were sufficient collectively to engage a Rule 4–215(e) inquiry into the putative merits of Taylor's purported request to discharge Amaral and replace him with Stein, the conduct of the trial judges who considered Taylor's request(s) as such complied with the requirements of Rule 4–215(e). Taylor was given an opportunity to explain the reasons underlying his requests and, after considering what Taylor had to say, the trial court found that his reasons did not merit a discharge of counsel and/or a postponement and denied his requests. Rule 4–215(e) and our case law construing that Rule require no more of a trial court. Second, we hold that, after balancing Taylor's constitutional right to counsel of choice against the trial court's discretion to fairly and orderly administer criminal trials, the trial court did not violate Taylor's constitutional right by denying his request for a continuance. Therefore, we reverse the judgment of the Court of Special Appeals and remand the case to the intermediate appellate court with directions to affirm the judgment of the Circuit Court.

## STANDARD OF REVIEW

■ This Court's "interpretation of the Maryland Rules is a question of law; as such, we review a trial court's determinations on matters of interpretation without deference." *Pinkney v. State*, 427 Md. 77, 88, 46 A.3d 413, 419 (2012) (citing *State v. Daughtry*, 419 Md. 35, 46, 18 A.3d 60, 66–67 (2011)). Our review of a trial court's denial of a motion based on its "departure from the requirements of Rule 4–215," however, is based on an abuse of discretion standard. *Pinkney*, 427 Md. at 88, 46 A.3d at 419; *State v. Hardy*, 415 Md. 612, 621, 4 A.3d 908, 913 (2010); *Mitchell v. State*, 337 Md. 509, 516, 654 A.2d 1309, 1313 (1995) (noting that the trial court must make " 'such an inquiry as is required to permit it to exercise the discretion required by the [R]ule' " (quoting *Moore v. State*, 331 Md. 179, 187, 626 A.2d 968, 972 (1993))); *see Felder v. State*, 106 Md.App. 642, 650–51, 666 A.2d 872, 876 (1995) (explaining that waiver decisions must generally be "entrusted to the wide discretion of the trial judge"). An abuse of discretion is committed when the trial court's decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *King v. State*, 407 Md. 682, 697, 967 A.2d 790, 799 (2009) (quoting *North v. North*, 102 Md.App. 1, 14, 648 A.2d 1025, 1032 (1994)).

## ANALYSIS

### A. The Trial Court Did Not Violate Taylor's Rights under Md. Rule 4–215(e)

■ When we interpret the Rules of Procedure, our first step is to look at "the words of the [R]ule." *Pinkney*, 427 Md. at 88, 46 A.3d at 420 (quoting *Brown v. Gress*, 378 Md. 667, 676, 838 A.2d 362, 367 (2003)). Our analysis ends with this step if:

> the words are clear and unambiguous.... Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent. We are also to give effect to the entire rule, neither adding, nor deleting,

words in order to give it a meaning not otherwise evident by the words actually used. Finally, we seek to give the rule a reasonable interpretation, not one that is illogical or incompatible with common sense.

*Id.* (quoting *Brown,* 378 Md. at 676, 838 A.2d at 367 (internal citations omitted)).

 Pursuant to Md. Rule 4–215(e), when a defendant expresses a desire to discharge his or her counsel in order to substitute different counsel or to proceed self-represented, a court must ask "about the reasons underlying a defendant's request to discharge the services of his trial counsel and provid[e] the defendant an opportunity to explain those reasons." *Pinkney,* 427 Md. at 93, 46 A.3d at 423 (stating that "[o]ur case law indicates that the process outlined in Rule 4–215(e) begins with a trial judge inquiring about the reasons underlying a defendant's request to discharge the services of his trial counsel and providing the defendant an opportunity to explain those reasons."). Hence, once a defendant makes an apparent request to discharge his or her attorney, the trial judge's duty is to provide the defendant with a forum in which to explain the reasons for his or her request. *See id.* (citing *Gonzales v. State,* 408 Md. 515, 531, 970 A.2d 908, 917 (2009); *State v. Brown,* 342 Md. 404, 425, 676 A.2d 513, 523–24 (1996); *Moore v. State,* 331 Md. at 179, 185–86, 626 A.2d 968, 971 (1993); *Williams v. State,* 321 Md. 266, 273, 582 A.2d 803, 806 (1990)). The record also must " 'be sufficient to reflect that the court actually considered th[e] reasons' given by the defendant." *Pinkney,* 427 Md. at 93–94, 46 A.3d at 423 (quoting *Moore,* 331 Md. at 186, 626 A.2d at 971).

 If the court determines that the request is supported by meritorious reasons, it must (1) permit the discharge; (2) order a continuance, if necessary; and, (3) "advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel." *Id.;* Md. Rule 4–215(e). In contrast, if the court finds that the defendant's reason for discharging his defense counsel is not meritorious,

it must first inform the defendant that "the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel." Md. Rule 4–215(e). Once the defendant is notified thus, the trial judge may proceed by "(1) deny[ing] the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings; (2) permit[ting] the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; [or] (3) grant[ing] the request in accordance with the Rule and relieve counsel of any further obligation." *Williams*, 321 Md. at 273, 582 A.2d at 806 (citing *Fowlkes v. State*, 311 Md. 586, 604–05, 536 A.2d 1149, 1158–59 (1988)); Md. Rule 4–215(e).

▮▮▮▮▮▮ Md. Rule 4–215(e) does not compel a defendant to utter any particular magical incantation or "talismanic phrase" in order to invite the court's interest in whether the defendant is pondering his or her right to counsel of choice, whether by choosing to discharge his or her attorney and replacing that attorney with new counsel or by choosing self-representation. *State v. Campbell*, 385 Md. 616, 629–30, 870 A.2d 217, 224–25 (2005) (quoting *Leonard v. State*, 302 Md. 111, 124, 486 A.2d 163, 169 (1985)). It is well established, however, that a defendant must provide a statement "from which the court could reasonably conclude" that the defendant desires to discharge his or her attorney, and proceed with new counsel or self-representation. *Hardy*, 415 Md. at 622, 4 A.3d at 914 (quoting *Snead v. State*, 286 Md. 122, 127, 406 A.2d 98, 101 (1979)). *Snead v. State* is a seminal Maryland case that explains this foundational step.

In *Snead*,[10] the defendant argued that his constitutional right to self-representation was violated when, after the trial

---

**10.** *Snead* involved Md. Rule 723(c) (no longer in effect), which required the trial court to determine whether the defendant understood sufficiently the consequences of waiving his right to counsel. Although Md. Rule 4–215(e) came into effect in 1984, it encompasses the defendant's

court refused to grant a continuance so Snead could obtain privately-retained counsel, the court did not inquire as to whether Snead wanted to represent himself, even though he stated to the court that he was dissatisfied with his assigned public defender and that he did not want an attorney. 286 Md. at 125–27, 406 A.2d at 99–100. We determined that the trial court could have concluded reasonably from Snead's statements that he expressed "a desire to defend [p]ro se," and that the court should have taken steps to ascertain whether Snead " 'truly' " desired to "manage his own defense." *Id.* at 127–28, 130–31, 406 A.2d at 101–03. Thus, we held that the trial judge's disregard of Snead's insistence that he was dissatisfied with his counsel, particularly when Snead stated "I don't want no attorney then," violated Snead's constitutional right to self-representation. *Id.* at 130–31, 406 A.2d at 102–03.

 Pre-trial statements indicating reasonably the defendant's present dissatisfaction with his or her attorney or the defendant's present desire to substitute counsel are "red flags" for a trial court. Such assertions invite a trial court to clarify whether the defendant is making a request to discharge counsel and, if so, the defendant must be provided then with a forum in which he or she (and/or counsel) may explain the underlying reasons for the purported request to discharge counsel. *See Hardy,* 415 Md. at 622, 4 A.3d at 914 (where this Court held that Hardy's declaration that he was " 'thinking about changing the attorney or something' reasonably should have led a trial judge to conclude that Hardy wanted, or at the very least was inclined, to discharge his counsel"); *State v. Davis,* 415 Md. 22, 27, 32, 997 A.2d 780, 782, 786 (2010) (where defense counsel notified the Administrative Judge that Davis told him he "didn't like" his evaluation of Davis' case and "[w]anted a jury trial and new counsel," defendant was held to have expressed a dissatisfaction with his counsel sufficient to require the judge to follow the Md. Rule 4–215(e) inquiry procedure); *State v. Campbell,* 385 Md. at 632, 870 A.2d at 226

pre-trial right to counsel, an issue that was covered by Md. Rule 723(c). *See* Rules Order, 11 Md. Reg. 90 (1984).

(which held that the trial court could have deduced reasonably—but failed to do so—that Campbell sought to discharge his counsel when Campbell declared to the court "I don't like this man as my representative" and "[Y]ou all wouldn't let me fire him[,]" and several other similar statements of dissatisfaction with his attorney); *Williams,* 321 Md. at 267, 582 A.2d at 804 (where a defendant stated to the court "I want another representative," the trial court acted erroneously in failing to comply with Md. Rule 4–215(e) and not permitting the defendant to explain why he wanted another appointed attorney).

 Md. Rule 4–215(e) is implicated even when a defendant's communication with the trial court does not express explicitly a request to discharge his or her attorney, but rather manifests reasonably a sign that he or she is considering the possibility of doing so. *Hardy,* 415 Md. at 623 n. 8, 4 A.3d at 914 n. 8 ("Even if Hardy did not intend to make [a request to discharge his trial counsel] definitively, however, the fact that he was considering the possibility of discharging counsel suggests that some consideration by the court into his rationale was appropriate."). It is irrelevant whether it is the defendant, his or her trial counsel, or the State who expresses the defendant's desire to discharge his or her attorney. As long as the statement at issue would "reasonably apprise a court of defendant's wish to discharge counsel[,]" a Rule 4–215(e) inquiry is required. *Davis,* 415 Md. at 32, 997 A.2d at 786.

Taylor argues that either (1) his purported requests to each of the trial court judges to substitute Stein for Amaral as his defense counsel or (2) his statement to Judge Young that he did not see "eye to eye" with Amaral was sufficient to constitute both a request to discharge Amaral and substitute Stein for him and a meritorious reason to do so, under Md. Rule 4–215(e).[11] We accept, for the sake of argument, that the proper

---

11. The provisions of Md. Rule 4–215(e) apply only to the time before "meaningful trial proceedings" begin. *Hardy,* 415 Md. at 625, 4 A.3d at 915 (citing *Brown,* 342 Md. at 427–28, 676 A.2d at 522). The events pertinent to our review commenced on the same day of the scheduled

analysis of this case should be under Md. Rule 4–215(e) and the cases construing that Rule.[12] We hold, however, that the individual and cumulative conduct of the judges who considered Taylor's purported requests complied with the inquiry procedure set forth in Rule 4–215(e), and thus did not violate Taylor's rights under that Rule when the requests were denied.

■■■■ First, we find no evidence in the transcribed proceeding before Judge Williams that Taylor expressed—either explicitly or implicitly—a desire to discharge Amaral, his attorney of record, and replace him with Stein. During the first pre-trial hearing on June 8, Stein notified Judge Williams that Taylor's family member had "contacted [him] and said they were going to retain [him] for the remaining case." Stein said, however, that he would agree to enter his appearance only if the court would allow him "ten days to get ready[.]"

re-trial (which continued over the ensuing days until the issues of Taylor's purported request were resolved by the trial court), when the parties were ready to select a jury. Because we have held that pre-trial hearings are not included within the ambits of "meaningful trial proceedings," *see id.*, the pre-trial hearings at issue here are within the dimension of Md. Rule 4–215(e).

12. Had the analysis of Taylor's request been seen (as it may have been by Judges Williams and Cox) as being merely a motion for continuance (or, at least, as necessarily including such relief), Taylor would not fare any better than he does elsewhere in this opinion. Based on our assessment of this record, Judges Williams and Cox (and even Judge Young initially) may have treated Taylor's (and by way of his attorney, Amaral's) statements as requests for a continuance primarily because (1) the requests were brought on the day of a re-trial for a case that was assigned priority status; (2) the initial request before Judge Williams was couched expressly as a request for a continuance; (3) Stein requested a seven-to-ten-day postponement before he would be ready to represent Taylor; and, thus (4) the record indicates reasonably that Judges Williams and Cox (and Judge Young initially) treated Taylor's request as a request for postponement. Because the decision to grant or deny a continuance is within the sound discretion of the court, we believe that, based on this record, each judge's denial of the motion was not an abuse of discretion, if viewed purely as a request for a continuance. *Fontaine v. State*, 134 Md.App. 275, 298, 759 A.2d 1136, 1148–49 (2000) (citing *Evans v. State*, 304 Md. 487, 514, 499 A.2d 1261, 1275 (1985)).

The trial court appears to have treated the request as a request for a continuance, and denied it based on the case's past history of frequent delays. Neither Taylor nor his counsel of record, Amaral, provided the court then with any reason to believe that Taylor was dissatisfied with Amaral or that he wanted to discharge him.

The same conclusion flows from the June 9 proceeding before Judge Young. At least there the parties discussed more clearly Taylor's desire to substitute Stein for Amaral. Both Amaral and the State asked the court to transfer the case back to the Administrative Judge or a designee, contending that Taylor's request for a postponement implicated Md. Rule 4–271 (which provides that only an Administrative Judge or his or her designee may grant a postponement beyond the *Hicks* date) and that the issue of whether a continuance under those circumstances could be resolved only by such a designated judge:

> [STATE]: I'm not saying I want to go to Admin, but I'm saying that this case . . .
>
> [AMARAL]: Should have gone to Admin.
>
> [STATE]: This case seems to indicate that . . . denying the Defendant the right to go in front of the only person which could grant them the postponement could possibly result in a reversal, if there was to be a conviction in this case.

Judge Young decided to transfer the case to Judge Cox, and called promptly Judge Cox on the telephone in open court. In his conversation with Judge Cox, Judge Young noted that he perceived Taylor's request to substitute counsel as one limited to a request for postponement only:

> THE COURT: Now, this morning [the parties] gave me this case, the case is . . . *Damon Happet v. State of Maryland,* it's 91 Md.App. 600, but anyway, the case says that it's reversible error to deny a Defendant a chance to go to—in any situation—to go to Admin Court which is the only place . . . because of the way our court is set up, only the Admin Court can grant postponements.

*　　*　　*　　*　　*　　*

Because it's not clear that a continuance would have implicated, Rule 4[-]271 would note that although no cases have addressed this, the Rule 4[-]271 has implicated it's an abuse of discretion for a trial judge to deny a Defendant access to the only means that has power to grant a postponement. . . . I'm just saying, under this case, since you're the only one who's empowered who could do it, the Reception court under this case should have sent it to you. And that was my practice.

Our investigation of the record of this proceeding produced no other evidence that Amaral, Taylor, or the court treated Taylor's assertion as a request to substitute counsel implicating Md. Rule 4–215(e).

Taylor next relies on his request to substitute counsel at the postponement hearing before Judge Cox and the June 10 proceeding before Judge Young to argue that his requests implicated clearly a necessity for a Md. Rule 4–215(e) inquiry, contending further that neither judge in those proceedings complied with the Rule's requirements. At the hearing before Judge Cox, Taylor's request to replace his current defense counsel with Stein was arguably an implicit request to discharge his present counsel, as demonstrated by the following excerpt:

[AMARAL]: But Mr. Taylor made mention to me yesterday that he wanted to retain Mr. Stein to represent him on this, and that his family apparently had just been able to recently come up with the funds to hire Mr. Stein.

So his position yesterday was that he wanted to have Mr. Stein represent him.

* * * * * *

In this situation, and I'm speaking on behalf of my client on this . . . I mean he does have a certain comfort level with Mr. Stein as a result of just having finished a trial with Mr. Stein. So Mr. Stein has represented him in the, you know, very recent past on an unrelated case.

* * * * * *

I think [Taylor's] request is a reasonable one based on all of the circumstances. The family's retained Mr. Stein on this case now.

THE COURT: But you're in the case?

[AMARAL]: But I'm in the case.

\* \* \* \* \* \*

THE COURT: Are you in the case, Mr. Stein?

[STEIN]: I'm only entering my appearance if the court will grant a one-week continuance.

THE COURT: I'm not so inclined. This case [is] from three years ago. This is a retrial. Mr. Amaral indicates he's prepared and ready to go to trial. [The State] indicates [it's] prepared and ready to go to trial. Request is denied. Thank you.

Assuming *arguendo* that Judge Cox treated (or should have treated) the above colloquy as implicating the necessity of a Md. Rule 4–215(e) inquiry, we conclude that the record demonstrates that Judge Cox considered sufficiently the reasons given by Taylor, through his defense counsel of record, for the purported request to discharge him. *Pinkney,* 427 Md. at 93–94, 46 A.3d at 423; *Moore,* 331 Md. at 186, 626 A.2d at 971. The record does not indicate that Judge Cox ignored Taylor's request—such as by refuting the defendant's declarations that he was dissatisfied with his attorney, as the trial judge did in *Hardy,* 415 Md. at 618–19, 4 A.3d at 911–12—or that Judge Cox gave Taylor's explanation a "cursory consideration," *Johnson v. State,* 355 Md. 420, 446, 735 A.2d 1003, 1017 (1999). Rather, the record demonstrates that Judge Cox permitted Amaral to explain thoroughly Taylor's reason for his request to replace Amaral with Stein. Based on Stein's clear condition precedent that he would enter his appearance on behalf of Taylor only if the court granted a continuance, and due to the submission of this request on the eve of a re-trial of a case assigned priority status, Judge Cox employed the court's discretion in finding that the reason given for the request— the "comfort level" Taylor had with Stein—was not sufficiently meritorious to warrant granting Taylor's request.

Examining the June 10 proceeding before Judge Young, we conclude that Judge Young complied likewise with the requirements of Md. Rule 4–215(e), even if we were to agree with Taylor that the discourse during that proceeding was sufficient to trigger the provisions of the Rule. When Judge Young asked Amaral whether the substitution of counsel question was "an issue" for him, Amaral replied:

Judge, I don't have any strong position on it one way or the other.... [T]he details of why Mr. Taylor wanted to replace me with Mr. Stein ... is that Mr. Stein had tried a murder case where Mr. Taylor was charged just recently and was able to successfully achieve an acquittal on that matter. And therefore Mr. Taylor felt comfortable and confident with Mr. Stein and that's why he wanted Mr. Stein to represent him on this case. Mr. Taylor, is that essentially the case, or am I missing anything?

[TAYLOR]: Um—*that pretty much sums it up.*

Amaral proceeded to ask Taylor if he was dissatisfied with anything that Amaral did "in the course of preparing for the [re-trial,]" after which the following occurred:

[TAYLOR]: No, as far as the first trial, it was just the fact that in this trial *I just felt as though as far as litigating on the certain of law, it seems to be the best of my knowledge as I can understand it, that's the only thing I just didn't see eye to eye with you on. But other than that, I had no problem, I was pleased with.*

THE COURT: And you're willing to have Mr. Amaral represent you, is that correct?

[TAYLOR]: I mean, if I don't have any other choice, obviously.

THE COURT: Well, you went to postponement court. Judge Cox denied the postponement for Mr. Stein to come in. So your choices are to keep Mr. Amaral, who is ready, willing and able to represent you, or discharge him which means you would represent yourself. Right? Do you understand that sir?

[TAYLOR]: Yes sir.

THE COURT: Alright. *And so you're willing to have Mr. Amaral represent you, is that correct?*

[TAYLOR]: *Yes I do.*

(Emphasis added).

As the Court of Special Appeals noted in its perusal of this record, Taylor's purported "request to discharge ... was not unambiguous." Even if we were to agree with the intermediate appellate court's determination that Taylor's declaration that he did not see "eye to eye" with Amaral "as far as litigating on the certain of law" mandated the court to conduct a Md. Rule 4–215(e) inquiry, we believe, nonetheless, that Judge Young's communications with Taylor and his counsel satisfied the Rule's requirements.

Like Judge Cox, Judge Young allowed Amaral and Taylor to explain Taylor's reason (as unintelligible as it was) for the purported request to discharge counsel. It is true the trial court did not attempt to make sense of nonsense by asking Taylor or Amaral follow-up questions to assist them in rehabilitating their afforded (but failed) opportunity to state any meritorious reasons for replacing Amaral with Stein. On the other hand, the trial court had no duty under Rule 4–215(e) to do so. Rather, the court complied with the mandate of Rule 4–215(e) by providing Taylor a forum in which to provide an explanation, informed Taylor that the trial court had no authority to grant a postponement beyond the *Hicks* date, and notified Taylor of his available choices: "to keep Mr. Amaral, who is ready, willing and able to represent you, or discharge him which means you would represent yourself." *See Pinkney,* 427 Md. at 93–94, 46 A.3d at 423; *Moore,* 331 Md. at 185–86, 626 A.2d at 971. When the State raised again the Md. Rule 4–215(e) issue, Judge Young noted that, even though he did not believe that Taylor's request implicated Md. Rule 4–215(e), his colloquy with Taylor nevertheless satisfied the requirements of that Rule.[13] After concluding that Taylor

---

13. Specifically, Judge Young stated:

lacked any meritorious reason for his request, Judge Young denied his request and, finding that Taylor elected to have Amaral as his defense counsel, passed on the case to Judge Prevas for trial.

We disagree with the Court of Special Appeals's conclusion that Judge Prevas failed to consider Taylor's reasons underlying his request to substitute counsel. As if Taylor's muddled explanation for his request had not received enough due consideration thus far, the June 10 proceeding began with Amaral informing Judge Prevas of the posture of the case, explaining that "there was an issue as to whether Mr. Stein was going to be allowed to enter his appearance on behalf of Mr. Taylor" because he would only represent Taylor if "he could get like 7 to 10 days in order to prepare the case for trial. Mr. Stein represented Mr. Taylor on another unrelated murder case which was—for which Mr. Taylor was found not guilty about a month ago." Hence, Judge Prevas was made aware also of Taylor's request to substitute counsel, and the fact that Stein would not be prepared for trial unless the court granted a seven-to-ten-day continuance. The State alerted Judge Prevas that Taylor had requested of Judge Young to allow him to replace Amaral with Stein, which, the State believed, triggered the "Rule 4–215 issue."

█ Rather than ignoring or refusing to consider Taylor's request (or treating it as considered and decided by his predecessors), Judge Prevas provided Taylor with yet another reasonable opportunity to explain the reasons for his Md. Rule

---

"[Taylor] said he didn't want to discharge Mr. Amaral. . . . I do those hearings. . . . That's why I said to him, do you want Mr. Amaral to represent you? He said yes. Since Judge Cox denied the postponement. So why would I conduct a hearing on whether or not there's waiver when he said he wants. Mr. Amaral to represent him?

\*　　\*　　\*　　\*　　\*　　\*

Because [Taylor]—if he wants to fire Mr. Amaral, he says, I don't want Mr. Amaral. Then I tell him the benefits, that his postponement request was denied, the case is set for trial, as far as this Court's concerned, it's either Mr. Amaral or he would have to represent himself. That's what I explained to him. He said I want Mr. Amaral."

4–215(e) request. We hold that this opportunity "gilds the lily" of what is required under Rule 4–215(e). A trial judge has no affirmative duty to rehabilitate a defendant's expression of why he or she may desire to discharge his or her counsel; rather, the trial judge has the duty to listen, recognize that he or she must exercise discretion in determining whether the defendant's explained reasons are meritorious, and make a rational decision. *See Pinkney,* 427 Md. at 93–94, 46 A.3d at 423 (citing *Gonzales v. State,* 408 Md. 515, 531, 970 A.2d 908, 917 (2009); *Brown,* 342 Md. at 425, 676 A.2d at 523–24; *Moore,* 331 Md. at 185–86, 626 A.2d at 971; *Williams,* 321 Md. at 273, 582 A.2d at 806). *See also* Md. Rule 4–215(e).

Judge Prevas gave Taylor even an additional opportunity to provide further explanation when he remarked to Amaral:

So [Taylor has] never discharged you even if he seeks to because I'll only find meritorious, a discharge of you, [if] Mr. Stein immediately takes over and keeps the case on schedule. The case is too old for any postponements.

 \* \* \* \* \* \*

And there's no reason to discharge you. *So anything further you or he wants to say?*

[AMARAL]: I have nothing further, sir.

(Emphasis added.) *See Pinkney,* 427 Md. at 83, 98–99, 46 A.3d at 417, 426 (where the trial judge asked Pinkney, "[w]hat's the problem with Mr. Thornton in your eyes?" and heard Pinkney's explanation, it was "apparent from the record that the trial judge gave Petitioner an opportunity to explain his reasons for requesting discharge of his trial counsel"). In his denial of Taylor's request, Judge Prevas recognized that the case had been postponed several times and that it was assigned priority status; however, such facts were merely factors considered properly in the course of the court's exercise of discretion in order to determine whether Taylor's request was meritorious.[14] He found ultimately that it was not.

14. Further depiction of the trial court's range of discretion in determining the merit of a defendant's underlying reason for a requested

Judge Prevas' rational conduct stands in stark contrast to the deficient level of Rule 4–215(e) inquiry that we have held as violative of those requirements. For example, in *Moore*, we held that a trial judge failed to comply with the Rule where the trial court "determined that [Moore] had waived his right to counsel" based solely on Moore telling the court that he had not finished paying his attorney and "the court's perception that [Moore] understood that he had a right to be represented by counsel." *Moore*, 331 Md. at 185–86, 626 A.2d at 971. The court then "admonished [Moore] that he should have sought alternative representation from the Public Defender's office. When [Moore] advised the court that he had done so, the court, again expressing some understanding of the circumstances, simply reiterated that " 'these cases have to be tried" and admonished the petitioner that 'you have to make other arrangements.' " *Id.* In the present case, the record indicates that the trial court considered sufficiently Taylor's desire to substitute his defense counsel, but did not find it meritorious.

Moreover, Judge Prevas' colloquy is distinct manifestly from cases where the trial court failed to conduct any form of investigation as to the defendant's reason for a Rule 4–215(e)

---

discharge of his attorney is found in the Minutes from a Rules Committee meeting, where the scope of the predecessor of Md. Rule 4–215(e)— Rule 3–305(d), a rule governing the provision or waiver of counsel— was discussed: "This subsection [3–305(d) ] might be misinterpreted as mandating a rescheduling of trial if discharged [sic] counsel is permitted on the day of trial, but a *rescheduling may not be appropriate when the defendant has no meritorious reason for requesting the discharge and is doing so only for purposes of delay.* It was agreed that Rule 3–305 is not intended to mandate rescheduling of trial in such situations." (Emphasis added). Minutes from Rules Committee Meeting of November 19/20, 1982 at 58–59.

This Court defers ordinarily to the discretion of the trial judge in determining whether a defendant provides a meritorious reason for requesting the discharge of counsel and whether the request is made for purposes of delay. Here, the record provides a reasonable basis for each of the trial judges in this case to have denied Taylor's requests for a continuance and/or to discharge Amaral after finding that his requests lacked merit: (1) the requests were brought on the first day of a scheduled re-trial; (2) the case was assigned priority status; and, (3) Stein requested a seven-to-ten-day postponement before he would be ready to represent Taylor.

request. *See Hardy,* 415 Md. at 617–20, 4 A.3d at 911–13; *Davis,* 415 Md. at 26–28, 997 A.2d at 782–83; *Campbell,* 385 Md. at 621–24, 870 A.2d at 220–221. Hence, we conclude that, because Judge Prevas provided Taylor with a further and final forum in which to assert his request and declare his reasons for his desire to replace his attorney, Taylor's rights under Rule 4–215(e) were not violated on this record.

### B. The Trial Court Did Not Violate Taylor's Constitutional Right to Counsel

 Taylor also argues that, by denying a continuance "necessary to accommodate" his exercise of his constitutional right to be represented by an attorney of his choosing, the trial court abused its discretion and violated Taylor's constitutional right to counsel of choice. We see it differently.

 It is axiomatic that a defendant's right to assistance of counsel "includes the right of a defendant, who does not require court-appointed counsel, to select the counsel of his or her choosing." *State v. Goldsberry,* 419 Md. 100, 117–18, 18 A.3d 836, 847 (2011).[15] The protection and judicial administration of this right are the primary purposes of Md. Rule 4–215(e), which functions to safeguard "both the right to counsel and the right to self-representation and ensure[ ] that decisions to waive counsel would pass constitutional muster." *Campbell,* 385 Md. at 629, 870 A.2d at 225 (quoting *Brown,* 342 Md. at 424, 676 A.2d at 523); *see Davis,* 415 Md. at 31, 997 A.2d at 785 (The goals of Rule 4–215(e) "are to protect the defendant's fundamental rights involved, to secure simplicity in procedure and to promote fairness in administration."). Otherwise, a defendant would be compelled by the court to acquiesce in unwanted representation, and the "defense presented [would not be] the defense guaranteed him by the Constitution, for, in a very real sense, it is not [*h* ]*is* defense." *Snead v. State,* 286 Md. 122, 128, 406 A.2d 98, 101 (1979) (quoting *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct.

---

**15.** *See* U.S. Const., amend. VI.; Md. Const. Declaration of Rights, Art. 21.

2525, 2534, 45 L.Ed.2d 562, 573–74 (1975)). Md. Rule 4–215(e) thus "gives practical effect to the Defendant's constitutional choices. It requires the defendant to decide if he will continue with present counsel or proceed *pro se.*" *Williams,* 321 Md. at 273, 582 A.2d at 806.

We have held consistently, however, "that the right to counsel does not give an accused the unfettered right to discharge current counsel and demand different counsel shortly before or at trial. . . . A defendant may not manipulate this right so as to frustrate the orderly administration of criminal justice." *Fowlkes,* 311 Md. at 605, 536 A.2d at 1159 (applying Rule 4–215(e)); *Goldsberry,* 419 Md. at 118, 18 A.3d at 847 (noting that the right to counsel of choice is "qualified" because it is subject to the judicial goal of ensuring that criminal trials are fair and do not frustrate the "orderly administration of criminal justice") (internal citations omitted).

The "presumption in favor of a defendant's counsel of choice" may be balanced against the "demands of [the court's] calendar," namely, the need for an "orderly administration of criminal justice." *Goldsberry,* 419 Md. at 118, 18 A.3d at 847; *United States v. Gonzalez–Lopez,* 548 U.S. 140, 152, 126 S.Ct. 2557, 2566, 165 L.Ed.2d 409, 421 (2006) (citing *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610, 620 (1983) (cautioning that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.' ") (internal citation omitted)). This balance is especially key in criminal trials. We held that "the conduct of a criminal trial is committed to the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." *Bruce v. State,* 351 Md. 387, 393, 718 A.2d 1125, 1127 (1998); *Fontaine v. State,* 134 Md.App. 275, 298, 759 A.2d 1136, 1148–49 (2000) ("[i]t is a basic principle that rulings on requests for continuances are within the sound discretion of the trial judge

and will not be disturbed on appeal absent an abuse of that discretion").

Because the "party challenging the discretionary ruling on a motion for a postponement has the burden of demonstrating a *clear* abuse of discretion," *State v. Frazier*, 298 Md. 422, 452, 470 A.2d 1269, 1285 (1984) (emphasis added), we hold that Taylor failed to show that the trial court committed a clear abuse of discretion when Judges Williams, Cox, Young, and Prevas denied Taylor's requests for a continuance in order to swap out Amaral for Stein as his attorney. Even if Taylor's request for postponement—as he asserts—was genuine, the court had the discretion, under Md. Rule 4–215(e) and according to our case law, to determine whether Taylor's request would result in a frustration of the "orderly administration of justice."

The record produces several factors which the court could have considered in denying Taylor's motions, namely: (1) Taylor's requests were brought on the very eve of a re-trial; (2) trial of the case was assigned priority status; (3) Stein declined to represent Taylor unless the court granted a seven-to-ten-day postponement; and, (4) the cumulative delaying effect of fourteen postponements in the procedural history of the prosecution. Although Taylor views the postponement of the re-trial by seven to ten days as "not asking too much," we defer to the discretion of four trial judges who held otherwise on that point. While a defendant's fundamental right to counsel of choice enjoys ordinarily a strong presumption, the trial court is not required to submit to this qualified constitutional right when, as here, it finds that the defendant provides no meritorious reason under Md. Rule 4–215(e) for his request to substitute counsel, and the "demands of the court calendar" did not allow for further delay. Therefore, we hold that the trial court did not violate Taylor's constitutional right to counsel of choice when it denied his requests for a continuance.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT**

**WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

BELL, C.J., and GREENE, J., Concur.

Concurring Opinion by BELL, C.J., which GREENE, J., joins.

The dispositive, indeed only, issue in this case is whether Judge Cox, the designee of the administrative judge for the purpose of ruling on requests for continuances in the Circuit Court for Baltimore City, erred in denying the request for postponement made by the petitioner, Tyres Kennard Taylor. In fact, that was the very, and only, basis for appearing before Judge Cox. To be sure, the basis for the postponement, the desire to substitute new counsel for present counsel, could have implicated the discharge of counsel portion, subsection (e), of Md. Rule 4–215,[1] but neither the presentation by the respondent's counsel nor anything that occurred during the hearing did so.[2] The respondent, of course, preferred to be

---

1. Maryland rule 4–215(e) provides:

 "**(e)** *Discharge of Counsel—Waiver.* If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance."

2. In requesting the postponement, the following colloquy took place:

 [AMARAL]: Mr. Taylor made mention to me yesterday that he wanted to retain Mr. Stein to represent him on this, and that his family

apparently had just been able to come up with the funds to hire Mr. Stein.

So his position yesterday was that he wanted to have Mr. Stein represent him. And as an officer of the court, I think Mr. Stein asked for a brief period of time to get prepared. And that was denied by Judge Williams.

Mr. Taylor revisited this issue with me this morning in wanting to address the court. And when he—when he raised the issue again, I mean that's when I started talking to Mr. Felsen about the issue of the administrative court yesterday.

THE COURT: Uh-huh.

[AMARAL]: Because I knew that there was some case law that essentially said you can't prevent the defendant from asking to go to the administrative—

THE COURT: That's all that case says on that issue, though.

[AMARAL]: Right. Exactly And the administrative judge can do what he wants.

THE COURT: Right.

[AMARAL]: In this situation, what the case law that we reviewed indicates is that if the issue regarding the request is fair and reasonable, that the court—that the court—that the administrative court would have to address.

In this situation, and I'm speaking on behalf of my client on this— and he can correct whatever things are not correct—I mean he does have a certain comfort level with Mr. Stein as a result of just having finished a trial with Mr. Stein. So Mr. Stein has represented him in the, you know, very recent past on an unrelated case.

So there's a comfort level there. And I know that the family was probably trying to come up with the funds to retain Mr. Stein, and that didn't happen until very—obviously until the day before trial. So I'm in a situation where I'm ready for trial, but I understand my client's position with regard to wanting to have his choice counsel. I don't—looking at the State's reasons, I don't know that we're looking at a long delay. But looking at the State's problems in terms of this one witness, they have him in custody. It's not like he's going anywhere.

There is certainly the ability to keep him here if necessary until the case is tried. The other witnesses are all available, and they are civilian witnesses or police officers. So I don't know that there's a great prejudice to the State with holding off on it for a few days in order to give Mr. Taylor his option of having the attorney of his choice.

If it doesn't—if the court sends us to court, you know, I'm ready to go. I think his request is a reasonable one based on all the circumstances. The family's retained Mr. Stein on the case now.

THE COURT: But you're in the case?

[AMARAL]: But I'm in the case.

THE COURT: And you're prepared to go to trial?

[AMARAL]: I'm prepared. And it's a [Public Defender]—it's a [Public Defender] assigned case.

THE COURT: I understand.

And you're in the case, and you're ready to go to trial, Mr. Felsen?

represented by a different lawyer because of a recent good result that lawyer obtained for him in a murder trial. While that lawyer was present at the postponement hearing, he made it clear that he was not prepared, without a short postponement to undertake the representation. The respondent's counsel presented the respondent's argument for postponement, appropriately emphasizing, the respondent's preference for the other lawyer. When asked whether he was prepared, however, he made clear that he was. No one indicated expressly or by implication, and the court did not inquire in that regard, that the respondent was in any way dissatisfied with present counsel other than his preference for the other lawyer.[3] In short, the only issue that was presented to Judge Cox was substitution of counsel as the basis for postponement.

Judge Cox denied the postponement request. When he did so, he was fully aware of the desire of the respondent to substitute counsel and the reason therefor. Therefore, the denial resolved an issue that necessarily would have to be resolved when considering a request for discharge of counsel

---

[FELSEN]: I'm ready to go to trial, Your Honor. We were about to pick a jury.
THE COURT: Anything else?
[FELSEN]: No.
[STEIN]: Your Honor, before you make a final decision,—
THE COURT: are you in the case, Mr. Stein?
[STEIN]: I'm only entering my appearance if the court will grant a one-week continuance.
THE COURT: I'm not so inclined. This case [is] from three years ago. This is a retrial. Mr. Amaral indicates he's prepared and ready to go to trial. Mr. Felsen indicates that he's prepared and ready to go to trial. Mr. Felsen indicates he's prepared and ready to go to trial. Request is denied. Thank you.

3. It may be argued that the better practice would have been for Judge Cox to have inquired as to whether the respondent wished to discharge counsel since it may, ordinarily, be inferred from a request to substitute one lawyer for another some level of dissatisfaction with the other. In this case, that inference does not seem to be in play—the most that was said was that there was a "certain comfort level," which was explained by the result in the recent trial—and, indeed, in his colloquy with the court, counsel invited the respondent to correct anything he said, which the respondent did not do.

and, thus, he would have to resolve again were the discharge of counsel decision to be considered as a stand alone issue and determined to be meritorious.[4] I agree with the majority, that, in denying the postponement, Judge Cox did not err.[5]

The issue, whether the respondent, by seeking to substitute counsel, sought to discharge counsel was not raised until the case returned to the trial judge, Judge Young, and only after the prosecutor had been advised by the Attorney General's office to raise and resolve the matter:

> [FELSEN, the prosecutor]: Before we call for the Jury, Your Honor, we can go over this when the Defendant gets here as well, but upon reviewing the Rules and consulting the Attorney General's Office yesterday, I think that before we pick the Jury I think that pursuant to Rule 4215(E) we need—the Court needs to get—this is my interpretation and consulting with the Attorney General's Office—the Court needs to consult, or needs to I guess address the issue of discharge of counsel because when Mr. Taylor got up yes- terday and said that he wanted to replace his attorney, that effectively . . .
>
> * * * * * *
>
> THE COURT: But why didn't you bring that up with Judge Cox? That was the whole reason I believe he was asking for a postponement. Right?

---

**4.** The issue did not arise, as we have seen, in the context of the discharge of counsel; however, when the issue is whether to substitute counsel, a preliminarily necessary step in the analysis is whether the reason for the substitution is a good one, is meritorious. It is not, I concede, the identical question, but I do believe it is close enough.

**5.** Although in deciding whether the court properly refused to postpone the case, we look only to the record made at the postponement hearing, Judge Cox's understanding of the facts and the intention of the respon- dent in making the motion to substitute counsel is confirmed by the colloquy before Judge Young, when, in response to a question the respondent said that he was fine with counsel, if he had no choice. That indicates that his desire was to substitute, not to discharge, counsel.

[FELSEN]: Right. But the issue is—there's two separate issues. One issue is whether or not Judge Williams should have sent us to the Administrative Court.

THE COURT: I sent you to the Administrative Court.

[FELSEN]: You did. But that was the first issue. The second issue is whether—I think what was lost by myself, I lost this as well, was the fact that when he asked to replace Mr. Amaral, he's effectively asking to discharge Mr. Amaral and have a new attorney come in. At that point, I think that's what implicates Rule 4215(E) in which he needs to be questioned as to why he wanted to discharge Mr ...

THE COURT: But that's why I sent you all—see here's the problem. I'm a trial court judge. Per the Rules and per administrative policy, Judge Holland has designated judges to be administrative judge. In Administrative Court the issues come up discharging counsel, substitution of counsel, reasons for postponement. This came up yesterday where Mr. Taylor wanted to go to Administrative Court to see if he could get a postponement. His family had retained Mr. Stein and I sent you all there. That was the place to raise this.

[FELSEN]: I don't disagree that we could have possibly raised it there.

THE COURT: That is the place to raise it. That is the place. That's the person who can say, he's in, he's out.

The trial judge was correct; he understood that the issue of the discharge of counsel was inextricably tied-up with postponement, an essentially administrative question. Indeed, as Rule 4–215(e) makes clear, a finding that there is a meritorious reason for the discharge of counsel triggers the continuance remedy, a matter exclusively within the responsibility of the administrative judge or his or her designee.

Here that decision, whether the discharge was meritorious had already been made. There was no need to revisit it and,

if revisited by a trial judge, it was of no consequence whatever.

For these reasons, I join in the judgment only.

Judge GREENE has authorized me to state that he joins in this concurring opinion.